**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JENNIFER CAEDRAN SULLIVAN, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 24-2491-DDC-BGS** |
| v. ) | |
| ) | |
| UNIFIED SCHOOL DISTRICT NO. 512, ) | |
| Johnson County, Kansas, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT USD NO. 512's**
**MOTION TO DISMISS**

**I.**     **Statement of Nature of the Matter Before the Court and Relief Sought.**  Plaintiff, a

teacher employed by USD 512, asserts five (5) federal and four (4) state law claims against

Defendant USD 512 each generally premised on the same alleged facts.  Each of Plaintiff's claims

should be dismissed.

**II.**     **Statement of Facts.**[1]  At the dismissal stage, the facts are generally limited to those set

forth in the pleadings including any written documents referenced therein as well as any public

information about which the Court may take judicial notice without converting this motion into

one for summary judgment.[2]  The following facts, as opposed to conclusory allegations, are

material to the motion before the Court:

---

[1]     These facts are admitted solely for purposes of this motion and should not be deemed admissions for purposes
of trial.  Wright, Miller & Kane, Fed.Prac. & Proc. § 2722 at 48.

[2]     "Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for
summary judgment….At any stage of the proceedings the court may take judicial notice of a fact which is not subject
to reasonable dispute, a requirement that is satisfied if the fact is 'capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be questioned.'"  JP Morgan Trust Co. Nat. Ass'n v. Mid-America
Pipeline Co., 413 F.Supp.2d 1244, 1258 (D.Kan. 2006) (quoting Fed.R.Evid. 201(b)(2)); see also Bain v. Continental
Title Holding Company, Inc., No. 16-2326-JWL, 2017 WL 264545, at *1 (D.Kan. Jan. 20, 2017) (citing *Tal v. Hogan*,
453 F.3d 1244, 1264-65, n.24 (10th Cir. 2006)).

1.      USD No. 512 is a unified school district and governmental subdivision of the State of Kansas, duly organized and existing pursuant to Article 6, § 5 of the Constitution of the State of Kansas and K.S.A. 72-1131, *et seq.*, which is governed by a board of education authorized to act by motion or resolution regular or special meetings that are open to the public.[3]

2.      Plaintiff is employed by Defendant USD 512 as a teacher. [4]

3.      Plaintiff's claims are centered on her assertion that USD 512 requires her, as a teacher, to use a student's preferred name and pronouns and to attend what she labels as diversity training and that she was retaliated against for voicing her opposition to such training when USD 512 officials investigated a student complaint pursuant to USD 512 Policy AC concerning Plaintiff that resulted in a determination that, while Plaintiff had not violated Policy AC or treated the student differently or negatively based on gender or the fact that the student was transgender, Plaintiff had "inadvertent[ly] and not purposeful[ly]" referred to the student by a nonpreferred name and pronouns on one or more occasions during the school year and a recommendation that some corrective action steps be taken to ensure that Plaintiff understood the importance of positive teacher-student relationships.[5]

### III.    <u>Argument and Authorities</u>.

A.      <u>Legal standards applicable to a motion to dismiss</u>.   The legal standards applicable to a motion to dismiss are as set forth in <u>Spiehs v. Lewis, *et al.*</u>, 2024 WL 5107274, *1 (D.Kan. Dec. 13, 2024).

---

3       K.S.A. 72-1138; KOMA, K.S.A. 75-4317 through 75-4320a.
4       Complaint, p. 1 Caption and p. 9, ¶ 40.
5       *See* Compliant Exhibit 16 (ECF No. 1-16), p. 7.

**B.     Plaintiff's Title VII claim, characterized as "Retaliation for Opposition to Racist DEI Required Training", should be dismissed.**[6]  An employee's opposition to diversity training is not "protected activity" under Title VII's anti-retaliation provisions.[7]  Accordingly, to the extent Plaintiff is seeking to pursue Title VII claims against any Individual Capacity Defendants, such claims should be dismissed.

**C.     Plaintiff lacks standing.**  In order to demonstrate constitutional standing under Article III, a plaintiff must establish: (1) they suffered an injury in fact; (2) there is a causal connection between the injury suffered and the conduct and question; and (3) that it is likely, not speculative, that a favorable decision will redress the injury.[8] Plaintiffs suffer an "injury in fact" where they have endured "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." [9]  The requisite causal connection between the injury and the conduct complained of requires the injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."[10]  The party invoking the court's jurisdiction bears the burden of establishing these elements by the manner and degree of evidence required at each stage of the litigation.[11]  Here, Plaintiff lacks standing to pursue her claims because she has not suffered an injury in fact. Article III standing requires an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." [12] Here, Plaintiff has not identified a legally protected interest – ie. Plaintiff, while working in her

---

6       Complaint, Count VI, pp. 89-90, & Exhibit 2 (ECF No. 1-2), Plaintiff's Charge of Discrimination.
7       Vavra v. Honeywell International, Inc., 106 F.4th 702 (2024).
8       Pac. Frontier v. Pleasant Grove City, 414 F.3d 1221, 1228-29 (10th Cir. 2005) (*citing* Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).
9       Id. (*quoting* Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130) (cleaned up).
10      Lujan, 504 U.S. at 560, 112 S.Ct. 2130 (cleaned up)..
11      Id. at 561, 112 S.Ct. 2130..
12      *See* Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130..

capacity as a teacher, has no legally protected interest in or right to address students in a manner different from the manner in which she is instructed to do so by Defendant USD 512, nor does she have a protected legal protected interest in not attending diversity or other training that might be required of her by the district as her employer.[13]    Accordingly, jurisdiction is lacking over Plaintiff's claims.

**D.    Plaintiff's § 1983 claims should be dismissed**.  USD No. 497 is a unified school district and governmental subdivision of the State of Kansas (generally considered to be a municipality – K.S.A. 12-105a(a)), duly organized and existing pursuant to Article 6, § 5 of the Constitution of the State of Kansas and K.S.A. 72-1131, *et seq.*, and is the legal name by which state statute authorizes the school district to be sued.[14]    Counts I, V, VII & VIII of Plaintiff's Complaint are premised on § 1983 for various alleged violations of Plaintiff's rights under the First Amendment to U.S. Constitution.[15]

A plaintiff seeking to impose liability upon a municipality under § 1983 is required to identify a "policy" or "custom" that caused the plaintiff's injury.[16]    A "policy" for purposes of municipal liability requires a written policy adopted by the "final policy maker" for the

---

13    Kluge v. Brownsburg Cmty. Sch. Corp., 64 F.4th 861 (7th Cir. 2023) (upholding summary judgment in favor of K-12 public school district in a Title VII case where teacher argued that as a Christian, he did not want to comply with the school's policy requiring the usage of preferred pronouns); Willey v. Sweetwater County School District No. 1 Bd. of Trustees, 680 F.Supp.3d 1250, 1285-1288 (2023) (finding that a public school teacher being asked or even compelled to use student's preferred pronouns was in her official duties as a teacher and not as a concerned citizen); Vavra v. Honeywell International, Inc., 106 F.4th 702 (2024) (addressing diversity training required by employer).

14    K.S.A. 72-1131 & -1132.

15    Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). Section 1983 does not create any substantive rights, rather it merely creates a remedy for violations of rights secured by federal statutory and constitutional law.  Gallegos v. City and County of Denver, 984 F.2d 358, 362 (10th Cir. 1993).  Thus, Plaintiff cannot premise his § 1983 claim on an alleged violation of state law, such as the Kansas Open Meetings Act, K.S.A. 75-4317 through 75-4320a ("KOMA"), or board policy/procedure.

These Counts are duplicative, seeking the same relief under the same constitutional and statutory provisions based primarily on the same set of facts and should generally be treated as a single claim.  Barrow v. Blouin, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014); Reid v. Unilever U.S., Inc., 964 F. Supp. 2d 893, 919 (N.D. Ill. 2013) ("Generally, district courts are accorded a great deal of latitude and discretion to dismiss duplicative claims.") (internal quotation marks omitted).

16    Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 403 (1997); Monell v. Dept. of Soc. Services, 436 U.S. 658, 691 (1978).

municipality whereas a "custom" requires a long-standing widespread practice by various municipal employees that the final policymaker was aware of and did not take action to address.[17] The identification of final policy making authority is a question of state law for the Court to decide.[18]  The Tenth Circuit has held that, in Kansas, the final policymaker for a school district is the board of education and that authority cannot be delegated.[19]  A school district cannot be held liable under § 1983 on the basis of *respondeat superior*.[20]  Nor can the single act of school employee create a municipal policy.[21]  Nor can liability be based on mere acquiescence in, or failure to investigate the basis of, a subordinate's decision where the alleged wrongfulness of the decision arises from an improper motive by the subordinate.[22]  However, in the absence of an underlying constitutional violation by a municipal employee, then a municipality cannot be found liable even if its policies or customs are deficient or improper.[23]  Thus, as a threshold matter, Plaintiff cannot pursue any § 1983 claims against Defendant USD No. 497 which are not premised on policies adopted or actions taken by its board of education.  This Plaintiff cannot do as she concedes in her Complaint that no such policy upon which her claims are premised was adopted by the board.

**1.     Plaintiff fails to state a claim upon which relief can be granted against Defendant USD 512.**  To establish a § 1983 claim, a *prima facie* showing must be made that: (1) an act or omission deprived Plaintiff of a right, privilege, or immunity secured by the U.S. Constitution or federal law; and (2) the act or omission was done by a person acting under color

---

17      Jett v. Dallas Indep. School Dist., 491 U.S. 701, 737 (1989).
18      Jett, 491 U.S. at 737; City of St. Louis v. Prapronik, 485 U.S. 112, 124 (1988).
19      Ware v. U.S.D. No. 492, 902 F.2d 815, 817 (10th Cir. 1990).
20      Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell at 664 n. 7 & 690.
21      *See* Jordan by Jordan v. Jackson, 15 F.3d 333 (4th Cir. 1994); Gates v. U.S.D. No. 449, 996 F.2d 1035, 1039 (10th Cir. 1993); Jantz v. Muci, 976 F.2d 623, 631 (10th Cir. 1992).
22      Prapronik, at 130.
23      Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir. 1994); Thompson v. Boggs, 33 F.3d 847, 859 (7th Cir. 1994), cert. denied, 514 U.S. 1063 (1995); see also Treece v. Hochstetler, 213 F.3d 360, 364 (7th Cir. 2000).

of law.  Plaintiff's claims all center on her desire to not have to address students by their preferred names or pronouns during school, to not have attend diversity training and to not be investigated under Policy AC when a student has filed a complaint against her.  The First Amendment affords no such rights.[24]

In particular, the U.S. Supreme Court has made clear that a public official's free speech rights are only protected when they are acting as private citizens, not while performing official duties.[25]  This forecloses Plaintiff's claims which are clearly premised on actions or speech that occurred during the performance of her duties as a teacher.[26]  Further, with respect to her "retaliation claims", Plaintiff is required to show "that (a) he or she was engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."[27]  To establish injury, Plaintiff must further show that

---

24    Kluge v. Brownsburg Cmty. Sch. Corp., 64 F.4th 861 (7th Cir. 2023) (upholding summary judgment in favor of K-12 public school district in a Title VII case where teacher argued that as a Christian, he did not want to comply with the school's policy requiring the usage of preferred pronouns); Willey v. Sweetwater County School District No. 1 Bd. of Trustees, 680 F.Supp.3d 1250, 1285-1288 (2023) (finding that a public school teacher being asked or even compelled to use student's preferred pronouns was in her official duties as a teacher and not as a concerned citizen); and Vavra v. Honeywell International, Inc., 106 F.4th 702 (2024) (addressing diversity training required by employer); and Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ., 232 F.3d 1334, 1341 (10th Cir. 2000) (mandating a teacher to comply with a professional development plan, meet with her supervisor on a regular basis, and strive to act professionally towards her colleagues, although unwelcome, "are of insufficient gravity to premise a First Amendment violation"); see also Couch v. Board of Trustees of Memorial Hosp. of Carbon County, 587 F.3d 1223, 1238-1239 (2009); Lincoln v. Maketa, 880 F.3d 533, 550 (10th Cir. 2018) (a standard workplace investigation generally does not constitute an adverse employment action); Pierce v. Texas Dept. of Criminal Justice, Inst. Div., 37 F.3d 1146, 1150 (5th Cir.1994) (holding that investigating an employee, where that investigation did not lead to any adverse action against the employee, is not actionable under the First Amendment).
25    Garcetti v. Ceballos, 547 U.S. 410, 419 (2006)
26    Willey v. Sweetwater County School District No. 1 Bd. of Trustees, 680 F.Supp.3d 1250, 1285-1288 (2023) (finding that a public school teacher being asked or even compelled to use student's preferred pronouns was in her official duties as a teacher and not as a concerned citizen).
27    Hirt v. U.S.D. No. 287, 2019 WL 1866321, at *17 (D. Kan. 2019), aff'd sub nom. Clark v. U.S.D. No. 287, 822 Fed. Appx. 706 (10th Cir. 2020) (quoting and citing Van Deelen v. Johnson, 497 F.3d 1151, 1155-56 (10th Cir. 2007); Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000) cert. denied, 533 U.S. 916 (2001)).

Defendant's actions would chill a person of ordinary firmness.[28]  This "standard for evaluating that

chilling effect is objective" and "vigorous."[29]  Plaintiff fails the first prong of this test because she

premises her retaliation claims on conduct not protected under the First Amendment.[30]  Plaintiff

further fails the second prong as, evident by the fact that the alleged retaliatory act - when USD

512 officials to include certain Individual Capacity Defendants investigated a student complaint

pursuant to USD 512 Policy AC concerning Plaintiff that resulted in a determination that, while

Plaintiff had not violated Policy AC or treated the student differently or negatively based on gender

or the fact that the student was transgender, Plaintiff had "inadvertent[ly] and not purposeful[ly]"

referred to the student by a nonpreferred name and pronouns on one or more occasions during the

school year and a recommendation that some corrective action steps be taken to ensure that

Plaintiff understood the importance of positive teacher-student relationships[31] -- is not considered

an adverse action under applicable law.[32]  Accordingly, Plaintiff's § 1983 claims fail as a matter of

law and should be dismissed.

      **E.**      **Plaintiff's claims premised on the Kansas Constitution should be dismissed.[33]**

Plaintiff cannot pursue claims for damages directly under the Kansas Constitution.[34]  Nor is there

any § 1983 analogue in Kansas and a state constitution or law cannot serve as a basis for a § 1983

claim.[35]  Further, while a Kansas local governmental entity and its employees[36] may be sued for

---

28      See Eaton v. Meneley, 379 F.3d 949, 953 (10th Cir. 2004).

29      Id. at 953, 955.

30      See note 24 supra.

31      See Compliant Exhibit 16 (ECF No. 1-16), p. 7.

32      See notes 24 & 36 supra.

33      Complaint, Count II, pp. 78-84, & Complaint Count III, pp. 84-86.

34      Prager v. Kan. Dep't of Revenue, 271 Kan. 1, 36-37 (2001) ("Kansas has so far rejected Bivens-type actions . . . for damages based directly under the Constitution without implementing legislation").

35      Section 1983 does not create any substantive rights, rather it merely creates a remedy for violations of rights secured by federal statutory and constitutional law.  Gallegos v. City and County of Denver, 984 F.2d 358, 362 (10th Cir. 1993).

36      Elected officials, such as Defendant 512's current and former board members who are named as Individual Capacity Defendants, are not subject to liability under the KTCA.  K.S.A. 75-6119.  So, even if a pathway to support a tort claim premised on the Kansas Constitution could somehow be found under the KTCA, such a claim could only

the torts of government workers acting within the scope of their employment under the Kansas Tort Claims Act ("KCATA"), K.S.A. § 75-6101 *et seq.*, liability under the KTCA does not extend to liability for violations of the Kansas constitution.  Instead, the KTCA only imposes liability "under circumstances where the governmental entity, if a private person, would be liable."[37]  Because the Kansas Constitution generally does not impose duties on private persons, courts have interpreted the KTCA not to create a constitutional cause of action.[38]  Finally, even, if the KTCA were construed to somehow permit claims based on violations of the Kansas constitution, there is no jurisdiction for the court to consider a claim under the KTCA because Plaintiff has failed to first satisfied the statutory ***jurisdictional*** prerequisite of filing a notice of claim pursuant to K.S.A 12-105b.[39]  Accordingly, Plaintiff's claims premised on the Kansas Constitution should be dismissed.

  **F.**  **Plaintiff's claims premised on the Kansas Preservation of Religious Freedom Act ("KPRFA") should be dismissed.[40]**  Plaintiff has again failed to plead compliance with or actually comply with K.S.A. 12-105b thereby depriving this court of subject matter jurisdiction over this claim.  Finally, to the extent a claim could be pursued against, such claims fail to state a claim upon which relief can be granted as Plaintiff's fails to plead sufficient facts, as opposed to conclusory allegations, demonstrating that Defendant USD 512 engaged in conduct which would

---

potentially be brought against Defendant USD 512 and its current or former employees who are Individual Capacity Defendants.  However, such a claim is foreclosed by Prager, 271 Kan. at 36-37.

37  K.S.A. § 75-6103(a) (emphasis added).

38  *See* Prager, 271 Kan. at 36-37.

39  K.S.A. 12-105b(d)(1) applies to both municipalities (defined in KS.A. 12-105a(a) to include unified school districts) and their employees.  Compliance with K.S.A. 12-105b is a condition precedent to pursuing a claim under Kansas state law against a municipality such as Defendant.  See Welch v. City of Kansas City, Kansas, 204 Kan. 765, 766-67 (1970) (referring to the predecessor statute, K.S.A. 12-105).  In the absence of compliance with K.S.A. 12-105b, the court lacks jurisdiction to hear any state law claims.  Id.; Wiggins v. Housing Authority of Kansas City, Kansas, 19 Kan.App.2d 610, 614 (1994); Quigley v. General Motors Corp., 647 F.Supp. 656, 660 (D.Kan. 1986).

40  Complaint, Count IV, pp. 86-88.

create a viable claim under the KPRFA.[41]  KPRFA sets for elements that are nearly identical to those for a § 1983 claim premised on the First Amendment to the U.S. Constitution.  Accordingly, Plaintiff's KPRFA claim fails for the same reasons.

**G.**     **Plaintiff's breach of contract claim should be dismissed.**[42]  Plaintiff's breach of contract claim is premised on her inaccurate belief that the investigation of the student complaint against her under Policy AC and resulting conclusion which did not find a violation of that Policy could be appealed through the contractual grievance policy in the negotiation labor agreement between the district and the teacher's union.  The plain and clear language of the contract which is attached indicate that this is not the case and warrants dismissal of her breach of contract claim.

**H.**     **Plaintiff's claims for punitive damages should be dismissed.**  Regardless of the legal theory on which her punitive damage claim is premised, it is black letter law that punitive damages may not be recovered against a governmental entity such as Defendant USD 512.[43]  Therefore, Plaintiff's claims for punitive damages against Defendant USD 512 must be dismissed for failure to state a claim upon which relief can be granted as there exists "no set of facts" which would entitle Plaintiff to an award of punitive damages.

**IV.**     **Conclusion.**  Each of Plaintiff's claims for relief should be dismissed and Defendant USD 512 should be awarded its costs, including reasonable attorneys' fees, and any additional relief this Court deems appropriate.

---

41      Wiley, 680 F.Supp.3d 1281-1291 (analyzing comparable elements of First Amendment right to free exercise of religion claim).
42      Complaint, Count IX, pp. 93-96.
43      City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981); K.S.A. 75-6105(c); Polson v. Davis, 635 F.Supp. 1130, 1153 (D.Kan. 1986); CIT Group/Sales Financing, Inc. v. E-Z Pay Used Cars, Inc., 29 Kan. App. 2d 676, 684 (2001) (citing Farrell v. General Motors Corp., 249 Kan. 231, 247 (1991) (breach of contract).

Respectfully submitted,

McANANY, VAN CLEAVE & PHILLIPS, P.A.
10 E. Cambridge Circle Drive, 300
Kansas City, Kansas  66103
Telephone:     (913) 371-3838
Facsimile:     (913) 371-4722
E-mail: ggoheen@mvplaw.com

By:  /s/ Gregory P. Goheen
       Gregory P. Goheen            #16291

Attorneys for Defendants Unified School District No. 512, Johnson County, Kansas, Mary Sinclair, Jessica Hembree, Jamie Borgman, April Boyd-Noronha, Heather Ousley, Mario Garcia, David Westbrook, Brad Stratton, Sara Goodburn, Michelle Hubbard, Joe Gilhaus, Rachel England, Michael Schumacher, Jeremy Higgins and David Ewers

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of December 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system to:

Fritz Edmunds
Edmunds Law Office, LLC
11715 W. 101st Street
Overland Park, KS 66214
Attorneys for Plaintiff

/s/ Gregory P. Goheen