# EXHIBIT 1

**Exhibit 1**



## STATE OF KANSAS
## OFFICE OF THE ATTORNEY GENERAL

**KRIS W. KOBACH**
ATTORNEY GENERAL

MEMORIAL HALL
120 SW 10TH AVE., 2ND FLOOR
TOPEKA, KS 66612-1597
(785) 296-2215 • FAX (785) 296-6296
WWW.AG.KS.GOV

December 7, 2023

**BY EMAIL & U.S. MAIL**
Shawnee Mission School District, USD 512
ATTN: Michelle Hubbard, Superintendent
8200 W 71st Street,
Shawnee Mission, Kansas 66204
michellehubbard@smsd.org

**RE:    "Socially Transitioning" Minors Without Parental Consent**

Dear Superintendent Hubbard:

Recent allegations regarding your school district's treatment of minors in its care are very troubling.

On April 21, 2023, Caedran Sullivan, a teacher then on staff with Shawnee Mission School District ("USD 512" or the "District"), alleged as follows:

> At a staff meeting this month, we were told we should refer to students by their preferred names and pronouns during the school day, but hide from the parents the fact that their minor children are transitioning at school. The district conceals the transgender policies from the public and will not release the [DEI] presentations we are compelled to watch.[1]

Further, in June 2023, Parents Defending Education made available on its website a document it alleges to have received from USD 512 in response to its request for "any policies and guidance related to gender identity."[2] The document is titled "Transgender Practices & FAQ:".[3] On the second page, the following question appears: "Can we call a student by their preferred name and/or pronouns?"[4] The answer is provided in two parts.[5] The first part is as follows (emphasis added):

> A. Yes. All students have the right to be addressed by the name and pronouns that correspond to the gender identity they assert at school. School staff and peers are

---

[1] Caedran Sullivan, *Kansas public school teacher: Yes, your children are being indoctrinated*, THE LION ¶ 9 (Apr. 21, 2023), https://readlion.com/2023/04/21/kansas-public-school-teacher-yes-your-children-are-being-indoctrinated/.

[2]  https://defendinged.org/incidents/shawnee-mission-school-district-appears-to-explain-in-guidance-that-parents-can-be-left-in-the-dark-regarding-their-childrens-gender-identity/.

[3] *See id.* (providing PDF copy).

[4] 2022 Transgender Practices & FAQ, p. 2.

[5] *Id.*

expected to respect a student's name and pronouns once they have been made aware. The building principal, in consultation first with the student, will be responsible for ensuring that the student's request is honored while working to engage and include the family *to the greatest extent possible* for support.[6]

This answer basically indicates that USD 512 staff will refer to a student using the name and pronouns demanded by such student while the "building principal" is the only USD 512 staff member "responsible for ensuring that the student's request is honored while working to engage and include the family to the greatest extent possible for support."

The phrase "to the greatest extent possible" is notable. If the student's family opposes (or if the student says his or her family would oppose) transition, will the building principal simply say nothing to the student's family about the student's transition?

This is problematic for two reasons.

*First*, parents have a fundamental constitutional right to direct both the education and upbringing of their children.[7] A substantial majority of parents would at the very least want to have some say about something so inextricably connected to the upbringing of a child as a child's decision to adopt, for example, a "transgender" or "gender nonconforming" identity.[8] Likewise, the vast majority of parents would almost certainly want the District to immediately inform them if their child decided to adopt such an identity at school.[9] But the District allegedly prohibits its personnel from disclosing such information to parents.

*Second*, it is undeniable that "[a] child changing his or her gender identity [could have] major long-term medical and psychological ramifications."[10] It would be arrogant beyond belief to hide something with such weighty consequences from the very people (parents) that both law and nature vest with providing for a child's long-term well-being. That a Kansas school district could so cavalierly allow *a minor child*—whom science tells us does not even have a fully formed brain until into his or her twenties[11]—to decide whether his or her parents know about such things is shockingly irresponsible. USD 512 has apparently surrendered to woke gender ideology to the point of jettisoning both propriety and common sense.

---

[6] *Id.* (emphasis added).

[7] *See Troxel v. Granville*, 530 U.S. 57, 65-69 (2000) (opinion of O'Connor, J.) (discussing and approvingly citing, among other authorities, *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *id.* at 77 (Souter, J., concurring) (collecting cases); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Parham v. J. R.*, 442 U.S. 584, 602 (1979); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972); *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-35 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923)).

[8] *See* Press Release, Parents Defending Educ., Parents Defending Education poll: 71% of voters support legislation requiring schools to inform parents if their child wants to change their gender identity (Mar. 21, 2023), *available at* https://defendinged.org/press-releases/parents-defending-education-poll-71-of-voters-support-legislation-requiring-schools-to-inform-parents-if-their-child-wants-to-change-their-gender-identity/ (crosstabs).

[9] *Id.*

[10] *Id.*; *accord* Complaint at ¶¶ 1-8, 23-66, 74, Chloe E. Brockman a/k/a Chloe Cole v. Kaiser Foundation Hospitals, Inc., No. STK-CV-UMM-2023-0001612 (Cal. Super. Ct. Feb. 22, 2023), *available at* https://libertycenter.org/wp-content/uploads/2023/02/Complaint1.pdf.

[11] Nat'l Inst. of Mental Health, *The Teen Brain: 7 Things to Know*, https://www.nimh.nih.gov/health/publications/the-teen-brain-7-things-to-know ("The brain finishes developing and maturing in the mid-to-late 20s.").

Given these concerns, please answer the following questions:

1. Does USD 512 have a policy or practice of requiring or advocating that its personnel not disclose a child's gender transition to a child's parents? If so, please provide me a true, correct, and complete copy of that policy.

2. If such policy or practice exists, was it provided to or otherwise made known to parents or the public? If yes, how?

3. If such a policy exists, how do you square that policy or practice with *Troxel v. Granville*,[12] *Stanley v. Illinois*,[13] *Pierce v. Society of Sisters*,[14] and other U.S. Supreme Court cases[15] that discuss a parent's right to direct the education and upbringing of their children?

4. If such a policy exists, who formulated and/or drafted the policy? Please identify every person involved, regardless of whether such person was a District employee or otherwise paid by the District; include consultants, volunteers, activists, and all other persons. Also, please identify the role each person played in formulating and/or drafting it.

5. If such a policy exists, did the USD 512 Board of Education consult with any lawyers, medical or psychological professionals, or other persons trained in relevant subjects before adopting the policy? Further, did you, or did a prior superintendent, present the policy and recommend it to the Board? If so, did you, or did the other superintendent, consult with any such professionals or other persons before recommending the policy? Please identify any such persons with whom either the Board, you, or the other superintendent consulted.

6. If such a policy exists, did the Board make any specific or special efforts to survey or otherwise solicit the input of parents before adopting the policy? Did you, or did the other superintendent, make any specific or special efforts to survey or otherwise solicit the input of parents before recommending that the Board adopt the policy? My office is specifically interested in efforts beyond mere open-forum comments made at meetings of the Board.

7. Has any teacher, administrator, or other USD 512 employee ever knowingly used the birth name and biological-sex-associated pronouns of a child when discussing that child with his/her parent or legal guardian, but used a different name or set of pronouns for the child at school or otherwise away from that parent or legal guardian? If yes, please identify that employee, the circumstances surrounding such behavior, and any additional facts that you believe justify such behavior.

8. Does the District (including any of its constituent schools) document in any way when a student adopts a "transgender" status or a "gender-nonconforming presentation" (including, but not limited to, when a student indicates a preference for pronouns that do not correspond to the student's biological sex)? If so, how is that documented? If there is a standard form(s),

---

[12] 530 U.S. 57 (2000).
[13] 405 U.S. 645 (1972).
[14] 268 U.S. 510 (1925).
[15] *See supra* note 7.

spreadsheet(s), or other such document(s) for recording such information, please provide a blank copy of such form(s), spreadsheet(s), or other such document(s).

Please reply to this letter by December 20, 2023. Thank you for your attention to this matter.

Sincerely,

Kris W. Kobach
Attorney General

Cc:    Shelly Trenholm, Clerk of the Board of Education (███████████████)