# EXHIBIT 28

Exhibit 28



**CONFIDENTIAL**

March 14, 2023

Dr. Joe Gilhaus
Deputy Superintendent (Appeal Officer)
Shawnee Mission School District
███████████████

Re:    Appeal of grievance process determination regarding allegations that Policy AC was violated

Dr. Gilhaus:

My firm represents one of your excellent teachers, Caedran Sullivan (English, SMN). This letter will serve as notice of appeal of the determination that Ms. Sullivan violated SMSD Board Policy AC and the determination of need for corrective action for Ms. Sullivan.

**Grievance Process Determination issued**: March 8, 2023 at 8:37 AM through General Counsel/Compliance Coordinator Rachel England. (*See* attached email **A**).

**Grounds for appeal from Policy AC**: (1) "procedural irregularity that affected the determination;" and (2) "conflict of interest or bias on behalf [sic] of the Compliance Coordinator or investigator."

**Determination NOT appealed**: "[T]he investigator determined that the evidence did not show discrimination based on gender identity;" "The investigator determined, with respect to each of the 4 allegations, that a preponderance of the evidence did not show that Policy AC was violated by the Respondent, or that Respondent treated the Complainant differently or negatively because of or based on his gender identity or the fact that he is transgender;" and "The investigator is recommending corrective action steps be taken ....  These action steps include: district administration will review current practice/procedure for how preferred names of students are communicated to teachers and steps will be taken to ensure that both classroom teachers and substitute teachers are aware of transgender students' preferred names; and district administrators will create a template within Skyward that can be used by all teachers when printing rosters and that will include both students' legal name and any other names entered in Skyward (such as preferred name)."

**Determination appealed**: "[T]he investigator determined that a preponderance of the evidence shows that Respondent referred to the Complainant by his legal name and using incorrect pronouns on one or a couple occasions during the school year;" and "the investigator

**913-669-3000 · 11715 West 101st Street · Overland Park, Kansas 66214 ·** ████████████

recommended a corrective action step to ensure that the Respondent understands the important [sic] of positive teacher-student relationships."

**Procedural irregularity that affected the determination**: (1) The Investigator or Compliance Coordinator invented a "violation" of a policy that does not exist – the determination cited disputed conduct that is not prohibited by Policy AC (or any other SMSD Board policy); (2) The student complaint allegedly contained four allegations of discrimination after the student was disciplined by the teacher Respondent but the Compliance Coordinator refused to produce the complaint or its contents in order for the Respondent to respond – both before and after the interview (*see* attached emails **B** & **C**); (3) In the March 3, 2023 interview of the teacher Respondent, both the Investigator and the Compliance Coordinator questioned the teacher and leveled accusations,[1] in contravention of Policy AC § 3: "The designated investigator will interview the complainant, witnesses, and the respondent ..."; (4) The grievance process did not begin with the requisite Policy AC presumption that the teacher did not engage in any prohibited conduct; (5) Although the complaint had nothing to do with race, the Respondent was interrogated about vague, unsubstantiated allegations of alleged "racist" materials in the teacher Respondent's room (without providing an allegedly "racist" book title and without providing a photograph or description of an allegedly "racist" flag); (6) The Investigator made vague, unsubstantiated allegations of "racist" conduct unrelated to the allegation of gender identity discrimination and then failed to make a determination to clear the teacher's name or her file of the baseless allegations; (7) Statements of counsel  were imputed to the teacher without any authority (or logic) for doing so (*see* attached email **D**); (8) The Investigator did not "create a report that summarizes the relevant evidence," in contravention of Policy AC § 3; and (9) the determination did not identify any time, place, or context for the alleged "racist" conduct or alleged "violation" of a policy that does not exist – the determination obliquely states "on one or a couple occasions during the school year," hardly enough to overcome the presumption that the Respondent did not engage in any prohibited conduct, a procedural requirement under the grievance process.

**Conflict of interest or bias on behalf** [sic] **of the Compliance Coordinator or investigator**: (1) By definition, the General Counsel cannot serve without conflicting interests in the two roles as (a) lawyer advocate for the District participating in and interrogating the Respondent in the interview process; and (b) unbiased Compliance Coordinator for the grievance process; (2) The Compliance Coordinator exhibited bias when she examined the teacher in the interview and would not answer the teacher's written questions before the interview, nor provide the Respondent with the complaint or its contents before the interview (*see* attached emails); (3) The Compliance Coordinator exhibited conflict of interest and bias when she falsely claimed in the interview[2] that she did not represent either party in the investigation – if that is the District's position, her communications about this investigation are not attorney-client privileged and Respondent hereby requests, as part of the grievance and appeal process, copies of all Compliance Coordinators' material communications about Respondent within the past

---

[1] https://drive.google.com/file/d/1Wy636GrSEiNKtCviDREU-0jW4aoB4gQA/view?usp=sharing
[2] https://drive.google.com/file/d/1evcYzooQZj3WV2r6C-7gz2mZMtycKzf2/view

five (5) years; and (4) The Compliance Coordinator exhibited conflict of interest and bias when she falsely stated that FERPA prevented the SMSD from producing the formal complaint.[3] On information and belief, the Compliance Coordinator ostensibly elicited the complaint from the student in targeting Respondent.

**Appeal Summary**: "Prohibited Conduct," as defined by the Board's Policy AC, does not include referring to a student by his or her *"legal"* name. Nor does it include using "*incorrect*" pronouns. Notwithstanding, Respondent has no recollection of ever referring to the Complaintant by anything other than the Complaintant's preferred name or with Complaintant's preferred pronouns. Moreover, Respondent repeatedly expressed her sincere desire to call students by their preferred name and use preferred pronouns to facilitate and develop good relationships with her students in a safe education environment.

Even if Respondent had violated some unknown  policy (which Respondent denies), consider the negative impact on Respondent and her career if the discipline (referred to as "corrective action") is allowed to be placed in or remain in her file and her name is not cleared of the baseless allegations of "racism," all premised on the determination that:

> **"Respondent referred to the Complainant by his legal name and incorrect pronouns on one or a couple occasions during the school year."**

Consider for a moment the previous sentence in bold (read it aloud); and try to comprehend the absurdity of its impact. Male and female pronouns have for *centuries* been based on the biological sex of the person. Never mind that the recent shaming and bullying for "misgendering" is irrational and actually inaccurate – does the District want to go on record as deciding that pronouns based on biological sex are "incorrect" pronouns rather than "non-preferred" pronouns?[4] Is that the hill the District has chosen? Our schools are supposed to be teaching facts and time-tested truth, not indoctrinating students with trendy dogma.

If the District or its administrators have adopted the "woke" culture mindset, this appeal will obviously ruffle feathers. But it is intended to. The insanity has to stop somewhere. Even Sean Penn and Bill Maher called-out the DEI initiatives as witch-hunts[5] and Pope Francis recently called gender ideology one of the "most dangerous ideological colonizations."[6]

---

[3] FERPA, or the Family Educational Rights and Privacy Act, is a federal law that protects the privacy of student education records. The law applies to all educational institutions that receive federal funding, including public schools, colleges, and universities. While FERPA generally requires that student education records be kept confidential, it does not specifically address the confidentiality of student complaints in a grievance process. The confidentiality of student complaints in a grievance process is typically determined by institutional policies and procedures, as well as state and federal laws.

[4] As a graduate of Shawnee Mission South and a taxpayer living in the Shawnee Mission School District, I would be stunned by such a decision.

[5] https://www.youtube.com/watch?v=vrIq2qCgerc

[6] https://dailycallernewsfoundation.org/2023/03/11/pope-francis-declares-gender-ideology-as-dangerous-to-civilization

**913-669-3000 · 11715 West 101st Street · Overland Park, Kansas 66214 ·** ▮

There is no better time to call out the baseless trend of pretending that boys can decide to be girls and girls can decide to be boys than in preventing an outstanding teacher with an impeccable record from having her career and reputation steamrolled because a transgender student lobs unsupportable accusations of gender identity (and race) discrimination after being disciplined, and academics want to appear virtuous or sensitive.

My client may or may not share these views, but if she did, she would be attacked for them. Nevertheless, her views and mine are irrelevant in this grievance process. The Respondent's actions are what need to be considered. She clearly stated that she endeavors to foster good relationships with her students (all of them) and refers to them with the names and pronouns they prefer. There is no credible evidence to the contrary. The Compliance Coordinator's imputation to the Respondent of the Respondent's counsel's statements (even after I clarified they were my own) is further proof that the Respondent has done nothing wrong and the investigation is a baseless witch-hunt attempting to target my client for exercising her First Amendment rights regarding the uncompensated, compulsory DEI meetings, for not belonging to the union, and for her status as a white woman over 40 who gender-identifies consistent with her biological sex. Such imputation and failure to clear my client's name and her file would also be retaliatory under the law and your own Policy AC.

When a biological girl decides to dress like a boy and change her name (not legally) to a boy's name, referring to that student as "she" or "her" could be an honest mistake easily made, even when teachers want to accommodate the student's preferences and the teachers give it their best effort. To deny this fact would be an outright deception. Attempts to feel morally superior or "woke" do not change the facts.

Even if Respondent ever accidentally referred to the Complaintant as "she" or "her" (which Respondent categorically denies because Respondent does not talk about her students or her classes to others, as clearly stated in the interview), it would be an objectively false statement to say Respondent used the "incorrect pronouns" on one or a couple occasions during the school year. The pronouns for biological girls are "she" and "her." It is absurd that this has to be stated for the record.

Efforts to embrace all students are admirable. Attempts to target those who have diverse beliefs on the best way to embrace certain students (that differ from the academic majority), are selfish, mean-spirited, and dangerous, not to mention myopic and arrogant. Hardly a "woke" objective. If this is maddening, it should arouse the need for reflection.

You may have friends and colleagues in the District administration whom you would like to protect and support, but in light of the potentially devastating impact this grievance process could have on one of your teachers, I am counting on you being a man of character.

One cannot reasonably sustain the current finding in this grievance process. Not only was there no violation of any existing policy but the whole procedural process was tainted by conflict of interest and bias. The determination is a petty attempt to "save face" and to justify an

unjustified investigation into an unsupportable allegation of gender identity discrimination that was deceptively conflated with nebulous allegations of racism after the Complaintant was disrupive and defiant in class and was disciplined by Respondent. This matter has made a mockery of the SMSD. Giving any credence to the farce would be a denial of fundamental fairness, a violation of the SMSD Board's Policy AC (both procedurally and substantively), and a violation of the law.

Likewise, there is no basis whatsoever for a "corrective" action step to "ensure that the Respondent understands the important [sic] of positive teacher-student relationships." There is nothing to "correct" (except the District's response). If you review the recorded statements/testimony given during the interview, you will see that Ms. Sullivan fully and completely understands the importance of positive teacher-student relationships.

If you have any questions, please do not hesitate to contact me.

Thank you,

*/s/Fritz Edmunds*

P.S. These are the recordings of the "interview" provided by Dr. Higgins:
https://drive.google.com/file/d/1evcYzooQZj3WV2r6C-7gz2mZMtycKzf2/view
https://drive.google.com/file/d/1Wy636GrSEiNKtCviDREU-0jW4aoB4gQA/view?usp=sharing

attachment: follow-up email to Ms. England providing notice of a litigation hold

cc: Rachel England, Dr. Jeremy Higgins, John McKinney

**913-669-3000 · 11715 West 101st Street · Overland Park, Kansas 66214 ·** ▇

Case 2:24-cv-02491-DDC-BGS    Document 44-28    Filed 02/04/25    Page 7 of 33

**Email A**

## FW: Policy AC Complaint - Notice of Determination

Caedran Sullivan <                              >

Mon 3/13/2023 9:54 AM

To: Caedran Sullivan <                              >

---

**From:** Rachel England <                              >
**Date:** Wednesday, March 8, 2023 at 8:37 AM
**To:** Caedran Sullivan <                              >
**Cc:** John McKinney <                              >, Jeremy Higgins <                              >
**Subject:** Policy AC Complaint - Notice of Determination

TO: Caedran Sullivan

This email provides written notice of the investigator's determination regarding the allegations in the Policy AC complaint, including information regarding corrective action.

The investigator determined, with respect to each of the 4 allegations, that a preponderance of the evidence did not show that Policy AC was violated by the Respondent, or that Respondent treated the Complainant differently or negatively because of or based on his gender identity or the fact that he is transgender.

While the investigator determined that the evidence did not show discrimination based on gender identity, the investigator determined that a preponderance of the evidence shows that Respondent referred to the Complainant by his legal name and using incorrect pronouns on one or a couple occasions during the school year, and that the evidence indicated that this conduct was inadvertent and not purposeful. The investigator is recommending corrective action steps be taken to prevent a reoccurrence of this issue. These action steps include: district administration will review current practice/procedure for how preferred names of students are communicated to teachers and steps will be taken to ensure that both classroom teachers and substitute teachers are aware of transgender students' preferred names; and district administrators will create a template within Skyward that can be used by all teachers when printing rosters and that will include both students' legal name and any other names entered in Skyward (such as preferred name).

Additionally, the investigator recommended a corrective action step to ensure that the Respondent understands the important of positive teacher-student relationships. Dr. Higgins will follow-up with you to schedule a meeting to discuss your reflections from this situation, identify what could have been done differently, and review expectations associated with the student-teacher relationship. A summary of conference will be provided to you following this meeting.

**Rachel England**
General Counsel

Shawnee Mission School District
8200 W. 71st Street
Shawnee Mission, KS 66204
smsd.org  |  913.993.6403

signature_1878027491

**Email B**

## Re: Phone Call Request

Rachel England <███████████████████>
Fri 2/24/2023 11:28 AM
To: Caedran Sullivan <████████████████████>
Cc: Jeremy Higgins <███████████████████>

Ms. Sullivan,

Dr. Higgins forwarded me the below email correspondence.

In regard to the assigned investigator, Policy AC states:

> *Investigator*: The District administrator designated to investigate a formal complaint
>
> For formal complaints alleging … staff-on-student prohibited conduct … a Human Resources Director or Human Resources Coordinator or designee will be the designated investigator.

In accordance with Policy AC, I designated Dr. Higgins as the investigator for this complaint. While I have the discretion to retain an outside investigator in my role as Compliance Coordinator, I have determined that there is no reason supporting the retention of an outside investigator for this complaint.

In regard to informal resolution, Policy AC states:

> At any time during the grievance process before a determination is reached, the parties may be offered or request an informal resolution process, such as mediation or restorative justice, in lieu of a full investigation and determination, but in no event will informal resolution be facilitated to resolve a complaint of staff-on-student sexual harassment. In order for informal resolution processes to be implemented, <u>all parties must voluntarily agree in writing</u>. In the event that a resolution is reached during the informal resolution process and agreed to in writing by the parties, then the formal complaint will be dismissed, and the complainant is precluded from filing a second complaint concerning the original allegation, however, patterns of conduct will be considered in subsequent complaints involving the same respondent. At any time prior to agreeing to a resolution, any party may withdraw from the informal resolution process and resume the grievance process.

Informal resolution was offered to and discussed with the complainant after the complaint was filed. The complainant and his parent declined to participate in informal resolution. I am unable to implement informal resolution procedures unless both parties agree to participate.

I can confirm that Dr. Higgins correctly responded to your request for a copy of the formal complaint. A copy of the formal complaint is never provided to the respondent on any Policy AC complaint, with the exception of formal sexual harassment investigations under Title IX because notice of the allegations and sharing of copies of evidence is required by the Title IX regulations. The District does not provide copies of the complaint to the respondent or to anyone else (other than the investigator) to protect the confidentiality of the investigation to the greatest extent possible, to ensure compliance with FERPA, to protect the integrity of interviews, and to prevent retaliation toward the complainant. As stated in Policy AC:

Except as necessary to complete a thorough and effective investigation and grievance process under this policy and as required by law or Board policy, the identity of complainants, respondents, and witnesses, information related to investigations, evidence gathered, and records created during investigations will be maintained in strict confidence.

In implementing this policy, the District will comply with state and federal laws regarding the confidentiality of student and employee records.

As Dr. Higgins explained, you will have a full opportunity to respond to the allegations and to the information obtained during the investigation when you are interviewed.

If you have any further questions about the Policy AC grievance process, you are welcome to contact me.

**Rachel England**
General Counsel

Shawnee Mission School District
8200 W. 71st Street
Shawnee Mission, KS 66204
smsd.org  l  913.993.6403



---

**From:** Jeremy Higgins <​███████████████████​>
**Date:** Friday, February 24, 2023 at 6:14 AM
**To:** Caedran Sullivan <​███████████████████​>
**Subject:** Re: Phone Call Request

Caedran –

As you are aware, administrators are regularly in classrooms to complete walkthroughs, informal observations, and to just be in classrooms.  If you have questions about an administrator visiting your classroom, I encourage you to reach out directly to that administrator.  I have not had any conversations with Ms. Gonzales or Mr. Jamison about my investigation nor have I directed them to be in your classroom.

In regard to your formal request for you an outside investigator and informal resolution, I will forward these requests to the Compliance Coordinators.

Thank you.

Text Description automatically generated

---

**From:** Caedran Sullivan <​███████████████████​>
**Date:** Friday, February 24, 2023 at 5:42 AM
**To:** Jeremy Higgins <​███████████████████​>
**Subject:** Re: Phone Call Request

Dr. Higgins:

Can you please advise why there were two (2) walkthroughs in my classroom Wednesday (2/22/23) when there have not been any for a long time. The timing seems ironic. I would also like to see all documentation generated as a result of and to warrant the walkthroughs (I have received email documentation from Gonzalez (3rd block), but not Jamison (1st block).

Regarding the formal complaint investigation, your statement that "The grievance process does not allow for the respondent to be provided with a copy of the formal complaint document" makes me wonder if you may have a conflict of interest. The AC Policy does not *prevent* you from providing a copy of or the contents of the formal complaint document ahead of our meeting/interview (that you indicate you will disclose at our meeting/interview). The basic tenets of good faith and fairness dictate that I not be blindsided in a formal investigation. You have the discretion to provide the formal complaint, or its contents, in advance. If you will not provide a copy of or the contents of the formal complaint document ahead of our meeting/interview, please consider this as a formal request for an outside investigator and forward this request to the Compliance Coordinator.

Likewise, I would like to request an informal resolution process. Please provide me with information about the District mediation and restorative justice options.

Thank you,

Caedran Sullivan

---

**From:** Jeremy Higgins <▓▓▓▓▓▓▓▓▓▓▓▓▓▓>
**Date:** Friday, February 24, 2023 at 5:12 AM
**To:** Caedran Sullivan <▓▓▓▓▓▓▓▓▓▓▓▓▓▓>
**Subject:** Re: Phone Call Request

Caedran –

Good morning.

I am reaching out to schedule a meeting to interview you and ask you questions as part of my ongoing investigation. I am available on Thursday, March 2 from 9:00AM-4:00PM or Friday, March 3 from 7:000AM-2:00PM. I am happy to come over to North or we can meet at the CAA if you would prefer that. Additionally, I am happy to work with Mr. Ewers to get you coverage if you would prefer to meet during the school day. You are welcome to have NEA representation with you if you choose.

Please let me know ASAP the date, time, and location that work best for you. Thanks!

📷 Text Description automatically generated

---

**From:** Jeremy Higgins <▓▓▓▓▓▓▓▓▓▓▓▓▓▓>
**Date:** Tuesday, February 21, 2023 at 2:23 PM
**To:** Caedran Sullivan <▓▓▓▓▓▓▓▓▓▓▓▓▓▓>
**Subject:** Re: Phone Call Request

Caedran -

Thank you in advance for your cooperation with the investigation.

Your email references language in the Professional Negotiated Agreement (PNA). Please be advised that this investigation does not fall under any specific provision of the PNA. This is not a disciplinary process (no disciplinary action against a respondent in connection with a Policy AC complaint would take place under after the conclusion of the investigation/grievance process), and this is not a general

complaint or informal complaint about a Professional Employee that would fall under provision V(J) of the PNA. Rather, this is a formal discrimination complaint that is being processed under Board of Education Policy AC. I have attached Board Policy AC for your reference. Please review the grievance process steps outlined in Policy AC. The grievance process does not allow for the respondent to be provided with a copy of the formal complaint document (with the exception of complaints alleging sexual harassment under Title IX, in which case the District is required to provide the respondent with specific notice of the allegations). However, when you are interviewed, you will be provided with a full opportunity to respond to the allegations in the Policy AC complaint and the information gathered in the investigation.

If you have any further questions about the Policy AC grievance process, you may direct them to me or to the Compliance Coordinators – Dr. John McKinney and Rachel England.

Text Description automatically generated

---

**From:** Caedran Sullivan <█████████████████████>
**Date:** Monday, February 20, 2023 at 12:25 PM
**To:** Jeremy Higgins <█████████████████████>
**Subject:** Re: Phone Call Request

Dr. Higgins:

I want to cooperate in every way possible with your investigation because I have absolutely nothing to hide. However, because it appears this may be elevating to a more adversarial posture, before we meet could you please provide me with:

(1) "the rules, regulations, and directions adopted by the Board or its representatives which are not inconsistent with the provisions of" the AGREEMENT between BOARD OF EDUCATION of UNIFIED SCHOOL DISTRICT NO. 512 JOHNSON COUNTY, STATE OF KANSAS and NATIONAL EDUCATION ASSOCIATION SHAWNEE MISSION, dated July 1, 2022 through June 30, 2023 (the "CBA");

(2) All materials provided in conjunction with the following requirement of the CBA: "Administration will provide orientation on the dispute procedure."

(3) a copy of all complaints against me as a Professional Employee pursuant to Section V(J)(2) of the CBA, whether or not they are subject to placement in my file pursuant to Section V(J)(3) of the CBA.

Thank you for your cooperation.

Caedran Sullivan

---

**From:** Caedran Sullivan <█████████████████████>
**Date:** Wednesday, February 15, 2023 at 9:14 PM
**To:** Jeremy Higgins <█████████████████████>
**Subject:** Re: Phone Call Request

Dr. Higgins,

I have received your email. I have forwarded your email to my attorney tonight and am waiting to hear from him. I will get back to you as soon as I can regarding a good time to schedule a call.

Thank you,

Caedran

**From:** Jeremy Higgins <█████████████████████>
**Date:** Tuesday, February 14, 2023 at 1:08 PM
**To:** Caedran Sullivan <████████████████████>
**Cc:** David Ewers <█████████████████>
**Subject:** Phone Call Request

Caedran –

Good afternoon, I hope this email finds you doing well.

I wanted to let you know that I have been assigned as the investigator for a Policy AC discrimination complaint that was recently filed by a SMN student and parent. This complaint has you listed as the respondent in the complaint. I would like to schedule a phone call with you to share information related to what my investigation will look like. This phone call will not be disciplinary in any way, but you are more than welcome to have NEA representation with you on the call if you wish.

Please let me know when you would like to have this phone conversation. Thanks!

Text Description automatically generated

# Email C

**Subject:**     CONFIDENTIAL - Caedran Sullivan

**Date:**        Monday, March 6, 2023 at 7:10:05 PM Central Standard Time

**From:**        ███████████████████

**To:**          Jeremy Higgins, Caedran Sullivan, Rachel England

**Attachments:** image001.jpg, image006.jpg

*NOTICE*: Do not click any links or open any attachments unless you trust the sender and know the content is safe.

CONFIDENTIAL

Dr. Higgins & Ms. England:

As you know, I represent Caedran Sullivan and accompanied her to the meeting with you both on Friday, March 3, 2023 in the Shawnee Mission School District ("SMSD") Center for Academic Achievement (the "Meeting").

For the record, you comported yourselves politely at the Meeting. Thank you. However, the process was tainted by bias, unfairness, and lack of due process. The questions at the Meeting were framed with a presumption that my client engaged in prohibited conduct. That was a violation of your own SMSD Policy AC (the "Policy") which states:

> **"Investigations begin with presumptions that the respondent did not engage in any prohibited conduct . . ."**

Moreover, it was improper under your own Policy to pepper the respondent with questions from both the Investigator and the Compliance Coordinator. Your Policy states:

> **"The designated investigator will interview the complainant, witnesses, and the respondent . . ."**

The complainant you mentioned ████ was disciplined for repeated open defiance of the cell phone policy Principal Ewers expressly advised teachers to more adamantly enforce. Please consider, and provide for our review, the timeline of events. It appears that ████ s complaint came *after* ████ was disciplined and removed from my client's class by administration. What are the dates of the following key events: (1) numerous instances ████ was sent to Student Services; (2) ████ was transferred to another class; (3) ████ filed a formal complaint against my client; (4) offer to ████ of informal resolution process by the Compliance Coordinator; (5) ████ s refusal of informal resolution process; (6) complainant ████ s offer of witnesses?

If you consider the evidence related to this matter there is no reasonable basis for continuing to pursue its investigation and there can be no further presumption that the complainant is credible. In sum: a student openly defied a cell phone policy in class and was angry when the policy was enforced. That student then attacked the teacher claiming "discrimination" because the student is "trans" but offers no specific evidence that the cell phone policy was not equally enforced against trans students nor any other specific acts of discrimination toward trans students. The student's refusal of an informal process is telling to any reasonable observer. The only claims of bias are vague, unspecific allegations that the teacher may have "misgendered" a student on occasion and not shown sufficient contrition. My client has no knowledge of such alleged occurrences, as she stated, so she could not "apologize" for them.

**Page 1 of 4**

When boys dress and act like girls and girls dress and act like boys, it is an easy mistake to refer to them by a pronoun that coincides with their biological sex, even when trying in earnest to use the pronoun of their choosing. If either of you have never made that mistake, then you can cast the first stone. The term "misgendered" is actually a misnomer. There is no scientific proof that gender differs from the sex defined by a person's XX or XY chromosomal makeup. So referring to someone by the pronoun our English language has for centuries attributed to biological males and biological females is

accurate-gendering, despite recent attempts to confuse the issue and provide more fodder for making people into victims. Notwithstanding, my belief regarding the inanity of the "misgendering" craze (especially in light of obvious indicators of a person's actual sex) does not mean my client either shares my beliefs or did not do her absolute best to refer to students by the gender pronouns or the new names they prefer, as she indicated in the interview.

The abject absence of credible evidence to support a claim of discrimination based on gender identity is underscored by the desperate and despicable attempt to then smear the teacher as somehow "racist." There is zero evidence that the cell phone policy was not equally enforced for black students, but the unsupported claims that the teacher had a "racist" flag in her room and "racist" book in her library were heaped upon the gossamer complaint that the teacher discriminated based on gender preference because the gender preference discrimination claim is entirely bereft of merit.

You both have a duty to quash blatantly unfounded allegations against one of your teachers; especially when they are baseless claims that are as potentially damaging as a claim of racism. I can appreciate your need to follow the Policy and investigate but this investigation should have been terminated long ago. A black student publicly praised my client at halftime during a football game and none of the black students in my client's classes have ever complained that she was "racist" or she discriminated based on race (or any other characteristic). Likewise, no trans students have previously come forth complaining or even suggesting that my client has any discriminatory animus toward them. If this ridiculous charade persists, you are not following policy but hiding behind it.

Irrespective of the Policy, your refusal to provide information about the complaint before the Meeting was fundamentally unfair to my client. Insisting that the "interview" was not a deposition but using the answers from the "interview" against her would be fundamentally unfair to my client. Leveling complaints of racism on the back of a complaint of gender preference discrimination by a transgender student who obviously holds a grudge against my client for enforcing the cell phone policy is fundamentally unfair to my client. Making accusations of a "racist" flag in my client's room without a photo, a description, or any evidence other than vague, non-specific, hearsay-equivalent statements is fundamentally unfair to my client. Making accusations that my client has a "racist" book or "racist" books in her library without providing even the name of the book(s) is fundamentally unfair to my client. Vague, non-specific allegations of disparate treatment are fundamentally unfair to my client. Hypothetical scenarios related to the false accusations in the complaint are fundamentally unfair to my client. Pressing for answers to predetermined questions after my client explained that she does not have a set policy for dealing with hypothetical scenarios was fundamentally unfair to my client. Asking for details without providing specifics surrounding the allegations is fundamentally unfair to my client – especially after she requested the complaint before the Meeting. Making allegations with the assumption that she engaged in prohibited conduct is fundamentally unfair to my client. If you interviewed students that the complaintant named as witnesses but do not provide my client an opportunity to name witnesses and interview those witnesses with the same presumptions, that would be fundamentally unfair to my client.

Please provide a copy of the formal complaint and the date it was filed. This is important for us to be able to fully and fairly respond to the allegations. Also, please provide the date(s) of other complaints against my client, if any, and the date(s) of witness statements. A refusal to do so would be a text-book example of bad-

faith.

It is obvious that Ms. Sullivan is being targeted. If she is disciplined as a result of this witch-hunt, you should know that I will take a personal interest (as a SMSD tax-payer and a lawyer who took a race discrimination case on behalf of my black client to the US District Court for the Western District of Missouri, the Eighth Circuit Court of Appeals, and then got licensed in the Supreme Court of the United States to attempt *certiorari*) in bringing to light the process, the policy, and the inequitable treatment and bullying in violation of your own Policy and the law. Even if it does not make economical sense for me in terms of damages and compensation for my legal services, you should be aware that I will bring whatever actions are necessary, to the full extent of the law, to expose the injustice. Everything will come to light. This would be a matter the SMSD Board and the media should also take an interest in. If you don't believe me, ask around. Ask anyone in the litigation community who knows me how far I will go to protect my clients from bullying and injustice. If Ms. Sullivan is disciplined and her good name is not cleared, it would be an atrocity that I won't stand for. This is not a threat; I am simply letting you know that I will rigorously defend my client.

We look forward to your response.

Thank you,

*/s/Fritz Edmunds*

Fritz Edmunds
EDMUNDS LAW OFFICE, LLC
11715 West 101st Street
Overland Park, Kansas 66214
913-669-3000
Fax: 913-894-1000
███████████████████



**Website:**
**https://edmundslaw.com/**

**This email and any files transmitted with it may contain confidential and/or attorney-client privileged information intended only for the individual in the salutation. If you are not that person, you could face criminal or civil penalties for disseminating this email. Please notify the sender immediately and delete it from your system if you have received this email by mistake.**

---

**From:** Jeremy Higgins <██████████████████████>
**Sent:** Friday, March 3, 2023 3:45 PM
**To:** Caedran Sullivan <██████████████████████>
**Cc:** Rachel England <████████████████████>; ████████████████; Jeremy Higgins <████████████████████>
**Subject:** Email Request and Audio Links

Caedran –

Thank you again for meeting with me today.  I recognize that our conversation was not the most pleasant, but

I appreciate you answering my questions and offering your perspective.

Per our conversation today, please send me any email correspondences that you may have had with ▮▮▮▮ s guardian related to cell phone use and or cell phone policy.

Additionally, the audio links from today's interview are below.  There are two of them.
- https://drive.google.com/file/d/1evcYzooQZj3WV2r6C-7gz2mZMtycKzf2/view?usp=sharing
- https://drive.google.com/file/d/1Wy636GrSEiNKtCviDREU-0jW4aoB4gQA/view?usp=sharing

Have a great weekend.



*Dr. Jeremy Higgins*
Director of Secondary Human Resources
Center for Academic Achievement

SHAWNEE MISSION SCHOOL DISTRICT
(913) 993-6440 | @thesmsdhr | www.smsd.org

# Email D

**Monday, March 13, 2023 at 16:36:11 Central Daylight Time**

| | |
|---|---|
| **Subject:** | Re: CONFIDENTIAL - Caedran Sullivan |
| **Date:** | Tuesday, March 7, 2023 at 11:55:50 AM Central Standard Time |
| **From:** | Rachel England |
| **To:** | ████████████████, Jeremy Higgins |
| **CC:** | Caedran Sullivan |
| **Attachments:** | image004.jpg, image005.jpg, image003.jpg, image001.png |

Mr. Edmunds,

Both emails were received.  To the extent that your first email provides information on behalf of Ms. Sullivan in response to the questions asked during her interview, it will be considered in the same manner as a written statement submitted by a party to an assigned investigator.  Please refer to the previous explanations provided with regard to the request for a copy of the formal complaint form completed by the student.  The formal complaint was filed on February 3.

**Rachel England**
General Counsel

Shawnee Mission School District
8200 W. 71st Street
Shawnee Mission, KS 66204
smsd.org  I  913.993.6403



---

**From:** ████████████████ <████████████████>
**Date:** Tuesday, March 7, 2023 at 11:43 AM
**To:** Jeremy Higgins <████████████████>, Rachel England <████████████████>
**Subject:** RE: CONFIDENTIAL - Caedran Sullivan

*NOTICE*: Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Dr. Higgins & Ms. England:

I am following up to ensure that you received my email below. I sent it with both delivery receipt and read receipt requests. Both came through in my blind copy to myself. I am not at all suggesting that you are hiding but wanted to make sure you received it and that your system did not block it.

Could you please confirm receipt by return email.

Thanks so much,

Fritz

Fritz Edmunds
EDMUNDS LAW OFFICE, LLC

11715 West 101st Street
Overland Park, Kansas 66214
913-669-3000
Fax: 913-894-1000
██████████████████



**Website:**
**https://edmundslaw.com/**

This email and any files transmitted with it may contain confidential and/or attorney-client privileged information intended only for the individual in the salutation. If you are not that person, you could face criminal or civil penalties for disseminating this email. Please notify the sender immediately and delete it from your system if you have received this email by mistake.

---

**From:** ████████████████ <████████████████>
**Sent:** Monday, March 6, 2023 7:10 PM
**To:** 'Jeremy Higgins' <████████████████>; 'Caedran Sullivan' <████████████████>; 'Rachel England' <████████████████>
**Subject:** CONFIDENTIAL - Caedran Sullivan

CONFIDENTIAL

Dr. Higgins & Ms. England:

As you know, I represent Caedran Sullivan and accompanied her to the meeting with you both on Friday, March 3, 2023 in the Shawnee Mission School District ("SMSD") Center for Academic Achievement (the "Meeting").

For the record, you comported yourselves politely at the Meeting. Thank you. However, the process was tainted by bias, unfairness, and lack of due process. The questions at the Meeting were framed with a presumption that my client engaged in prohibited conduct. That was a violation of your own SMSD Policy AC (the "Policy") which states:

> **"Investigations begin with presumptions that the respondent did not engage in any prohibited conduct . . ."**

Moreover, it was improper under your own Policy to pepper the respondent with questions from both the Investigator and the Compliance Coordinator. Your Policy states:

> **"The designated investigator will interview the complainant, witnesses, and the respondent . . ."**

The complainant you mentioned, ██████ was disciplined for repeated open defiance of the cell phone policy Principal Ewers expressly advised teachers to more adamantly enforce. Please consider, and provide for our review, the timeline of events. It appears that ██████s complaint came *after* ██████ was disciplined and removed from my client's class by administration. What are the dates of the following key events: (1) numerous instances ██████ was sent to Student Services; (2) ██████ was transferred to another class; (3) ██████



**Page 2 of 5**

filed a formal complaint against my client; (4) offer to ▮▮▮▮ of informal resolution process by the Compliance Coordinator; (5) ▮▮▮▮ s refusal of informal resolution process; (6) complainant ▮▮▮▮ s offer of witnesses?

If you consider the evidence related to this matter there is no reasonable basis for continuing to pursue its investigation and there can be no further presumption that the complainant is credible. In sum: a student openly defied a cell phone policy in class and was angry when the policy was enforced. That student then attacked the teacher claiming "discrimination" because the student is "trans" but offers no specific evidence that the cell phone policy was not equally enforced against trans students nor any other specific acts of discrimination toward trans students. The student's refusal of an informal process is telling to any reasonable observer. The only claims of bias are vague, unspecific allegations that the teacher may have "misgendered" a student on occasion and not shown sufficient contrition. My client has no knowledge of such alleged occurrences, as she stated, so she could not "apologize" for them.

When boys dress and act like girls and girls dress and act like boys, it is an easy mistake to refer to them by a pronoun that coincides with their biological sex, even when trying in earnest to use the pronoun of their choosing. If either of you have never made that mistake, then you can cast the first stone. The term "misgendered" is actually a misnomer. There is no scientific proof that gender differs from the sex defined by a person's XX or XY chromosomal makeup. So referring to someone by the pronoun our English language has for centuries attributed to biological males and biological females is accurate-gendering, despite recent attempts to confuse the issue and provide more fodder for making people into victims. Notwithstanding, my belief regarding the inanity of the "misgendering" craze (especially in light of obvious indicators of a person's actual sex) does not mean my client either shares my beliefs or did not do her absolute best to refer to students by the gender pronouns or the new names they prefer, as she indicated in the interview.

The abject absence of credible evidence to support a claim of discrimination based on gender identity is underscored by the desperate and despicable attempt to then smear the teacher as somehow "racist." There is zero evidence that the cell phone policy was not equally enforced for black students, but the unsupported claims that the teacher had a "racist" flag in her room and "racist" book in her library were heaped upon the gossamer complaint that the teacher discriminated based on gender preference because the gender preference discrimination claim is entirely bereft of merit.

You both have a duty to quash blatantly unfounded allegations against one of your teachers; especially when they are baseless claims that are as potentially damaging as a claim of racism. I can appreciate your need to follow the Policy and investigate but this investigation should have been terminated long ago. A black student publicly praised my client at halftime during a football game and none of the black students in my client's classes have ever complained that she was "racist" or she discriminated based on race (or any other characteristic). Likewise, no trans students have previously come forth complaining or even suggesting that my client has any discriminatory animus toward them. If this ridiculous charade persists, you are not following policy but hiding behind it.

Irrespective of the Policy, your refusal to provide information about the complaint before the Meeting was fundamentally unfair to my client. Insisting that the "interview" was not a deposition but using the answers from the "interview" against her would be fundamentally unfair to my client. Leveling complaints of racism on the back of a complaint of gender preference discrimination by a transgender student who obviously holds a grudge against my client for enforcing the cell phone policy is fundamentally unfair to my client. Making accusations of a "racist" flag in my client's room without a photo, a description, or any evidence other than vague, non-specific, hearsay-equivalent statements is fundamentally unfair to my client. Making accusations that my client has a "racist" book or "racist" books in her library without providing even the name of the book(s) is fundamentally unfair to my client. Vague, non-specific allegations of disparate treatment are fundamentally unfair to my client. Hypothetical scenarios related to the false accusations in the complaint are

**Page 3 of 5**

fundamentally unfair to my client. Pressing for answers to predetermined questions after my client explained that she does not have a set policy for dealing with hypothetical scenarios was fundamentally unfair to my client. Asking for details without providing specifics surrounding the allegations is fundamentally unfair to my client – especially after she requested the complaint before the Meeting. Making allegations with the assumption that she engaged in prohibited conduct is fundamentally unfair to my client. If you interviewed students that the complaintant named as witnesses but do not provide my client an opportunity to name witnesses and interview those witnesses with the same presumptions, that would be fundamentally unfair to my client.

Please provide a copy of the formal complaint and the date it was filed. This is important for us to be able to fully and fairly respond to the allegations. Also, please provide the date(s) of other complaints against my client, if any, and the date(s) of witness statements. A refusal to do so would be a text-book example of bad-faith.

It is obvious that Ms. Sullivan is being targeted. If she is disciplined as a result of this witch-hunt, you should know that I will take a personal interest (as a SMSD tax-payer and a lawyer who took a race discrimination case on behalf of my black client to the US District Court for the Western District of Missouri, the Eighth Circuit Court of Appeals, and then got licensed in the Supreme Court of the United States to attempt *certiorari*) in bringing to light the process, the policy, and the inequitable treatment and bullying in violation of your own Policy and the law. Even if it does not make economical sense for me in terms of damages and compensation for my legal services, you should be aware that I will bring whatever actions are necessary, to the full extent of the law, to expose the injustice. Everything will come to light. This would be a matter the SMSD Board and the media should also take an interest in. If you don't believe me, ask around. Ask anyone in the litigation community who knows me how far I will go to protect my clients from bullying and injustice. If Ms. Sullivan is disciplined and her good name is not cleared, it would be an atrocity that I won't stand for. This is not a threat; I am simply letting you know that I will rigorously defend my client.

We look forward to your response.

Thank you,

*/s/Fritz Edmunds*

Fritz Edmunds
EDMUNDS LAW OFFICE, LLC
11715 West 101st Street
Overland Park, Kansas 66214
913-669-3000
Fax: 913-894-1000
█████████████



**Website:**
https://edmundslaw.com/

This email and any files transmitted with it may contain confidential and/or attorney-client privileged information intended only for the individual in the salutation. If you are not that person, you could face criminal or civil penalties for disseminating this email. Please notify the sender immediately and delete it from your system if you have received this email by mistake.

**From:** Jeremy Higgins <███████████████████>
**Sent:** Friday, March 3, 2023 3:45 PM
**To:** Caedran Sullivan <██████████████████>
**Cc:** Rachel England <████████████████████>; ███████████████████; Jeremy Higgins <██████████████████>
**Subject:** Email Request and Audio Links

Caedran –

Thank you again for meeting with me today.  I recognize that our conversation was not the most pleasant, but I appreciate you answering my questions and offering your perspective.

Per our conversation today, please send me any email correspondences that you may have had with ██████ s guardian related to cell phone use and or cell phone policy.

Additionally, the audio links from today's interview are below.  There are two of them.
- https://drive.google.com/file/d/1evcYzooQZj3WV2r6C-7gz2mZMtycKzf2/view?usp=sharing
- https://drive.google.com/file/d/1Wy636GrSEiNKtCviDREU-0jW4aoB4gQA/view?usp=sharing

Have a great weekend.



Dr. Jeremy Higgins
Director of Secondary Human Resources
Center for Academic Achievement

SHAWNEE MISSION SCHOOL DISTRICT
(913) 993-6440 | @thesmsdhr | www.smsd.org

GAE-E

__CONFIDENTIAL__

SHAWNEE MISSION PUBLIC SCHOOLS

**CERTIFIED EMPLOYEE COMPLAINT FORM**

__Level:__ (2) (3) (4)
(circle one to indicate level of complaint)

| Name of Employee | Building | Assignment |
|---|---|---|
| Caedran Sullivan | Shanee Mission North | Full-time Teacher, English |

A. Date incident for complaint occurred: __March 16, 2023__

B. Detailed statement of facts upon which complaint is based: __Complaintant was denied the benefit of the SMSD Board Policy AC by the Administration in violation of the Professional Negotiated Agreement between the Board of Education and the NEA Shawnee Mission (the "PNA") when the Administration failed to follow the Policy AC grievance process procedures, failed to acknowledge conflicts of interest and then failed to follow the Policy AC appeal process, all in violation of Article II(B) of the PNA.__

C. Resolutions sought: __Complaintant (or Grievant) requests that Administration follow the Policy AC which expressly states "All policies of the Board of Education and administrative procedures shall be enforced in compliance with this policy," as more fully stated in the attached exhibits. In sum, Complaintant or Grievant would like her appeal under the Policy AC heard so that her name is cleared.__

_J. Caedran Sullivan_ _____     _3/24/23_ _____
(signature)                                                                 (date)

Date Received: _____

Resolution by administrator: _____

_____

_____

_____

Signature _____

Date _____

__Procedure:__     Level 2 – Principal/Supervisor
Level 3 – Associate Superintendent
Level 4 – Superintendent

__Exhibit__
Adopted:  11-8-04.

**From:**
**Sent:** Friday, March 24, 2023 1:37 PM
**To:** 'Rachel England'
**Cc:** 'Jeremy Higgins'; 'John McKinney'; 'Joe Gilhaus'
**Subject:** RE: Appeal - Caedran Sullivan
**Attachments:** Higgins Email 2.pdf

**CONFIDENTIAL**

Ms. England:

I am in receipt of your email below. It cannot be reasonably or truthfully asserted that the determination of "legal name" or "incorrect pronouns" use was not a "determination on the Policy AC complaint" or that this matter "does not fall under the Policy AC process." As part of the grievance process, the allegations read aloud by the investigator from the investigator's computer in the "interview" (but never provided to the Respondent) included:

> **Allegation 1**: ███ has reported that you referred to him by his dead name or dead-named him on a couple of occasions after the first day or days of school. I want to give you an opportunity to respond to this allegation."

> **Allegation 2**: "Other students that I have interviewed have reported to me that you used both ███s and ███s dead names when referring to them in class and that you did not correct yourself afterwards. I want to give you an opportunity to respond to the fact that multiple students have confirmed that you used the incorrect name when referring to two different transgender students."

> **Allegation/"Accusation" 3**: ███ has reported that he feels that you purposefully used his dead name to refer to him because when this occurred he had been in your class for several weeks and you knew his preferred name. I want to give you an opportunity to respond to that accusation."

> **Allegation 4**: ███ has reported that you misgendered him and used female pronouns on one occasion when referring to him in class. He believes that you did this with a discriminatory motive meaning that you treated him differently based on his gender identity and the fact that he is a transgender person. I want to give you an opportunity to respond to that."

These facts are part of the record. The District's attempt to avoid them is precisely the reason I requested the "interview" be recorded. To the extent the recordings of the "interview" on the investigator's device and the recordings uploaded to the cloud were not included in, or not perceived to be included in, the evidence for which my previous emailed letter provided notice of a "litigation hold," please add to the litigation hold list all recordings from the investigation process on the investigator's device(s) or saved to the cloud.

The foregoing and the following facts support the conclusion that the determination: "[T]he investigator determined that a preponderance of the evidence shows that Respondent referred to the Complainant by his

legal name and using incorrect pronouns on one or a couple occasions during the school year;" and "the investigator recommended a corrective action step to ensure that the Respondent understands the important [sic] of positive teacher-student relationships" falls under the Policy AC appeal process and is not a "separate determination" governed by the Professional Negotiated Agreement ("PNA"):

1. When other allegations (despicable allegations of "racism") were leveled against my client that were not part of the Policy AC complaint and grievance process, the interviewer stated as such with clarifications like: "This complaint does not involve a report of racism discrimination, but …"
2. The determination of "legal name" and "incorrect pronouns" use was made by weighing the evidence and an express finding of a "preponderance" thereof in the grievance process "investigation" defined in the Policy AC ("For all complaints other than complaints alleging sexual harassment under Title IX: (a) the report also will include the investigator's determination as to whether the preponderance of the evidence shows that this policy was violated.")
3. The determination of "legal name" and "incorrect pronouns" use incorporated the defined terms "Respondent" and "Complaintant" as defined in the Policy AC.
4. There was no "Complaint," "Complaintant," "Respondent," or "Investigator" for anything but the Policy AC complaint, grievance process, and investigation.
5. The determination of "legal name" and "incorrect pronouns" use was made in connection with and at the conclusion of the Policy AC investigation (Policy AC states: "A determination that this policy has been violated and credibility determinations will only be made at the conclusion of an investigation.")
6. The investigator expressly stated that the "investigation does not fall under any specific provision of the PNA."
7. The investigator expressly stated, "This is not a disciplinary process (no disciplinary action against a respondent in connection with a Policy AC complaint would take place under after [sic] the conclusion of the investigation/grievance process) …"
8. The investigator expressly stated, "… this is not a general complaint or informal complaint about a Professional Employee that would fall under provision V(J) of the PNA. Rather, this is a formal discrimination complaint that is being processed under Board of Education Policy AC."
9. The following language from your email, stating the "*determination"* from the grievance process "investigation" is quoted verbatim (with my emphasis) as follows:

> While the investigator determined that the evidence did not show discrimination based on gender identity, ***the investigator determined that a preponderance of the evidence shows*** that ***Respondent*** referred to the ***Complainant*** by his legal name and using incorrect pronouns on one or a couple occasions during the school year, and that the evidence indicated that this conduct was inadvertent and not purposeful. The investigator is recommending corrective action steps be taken to prevent a ***reoccurrence of this issue***. These action steps include: district administration will review current practice/procedure for how preferred names of students are communicated to teachers and steps will be taken to ensure that both classroom teachers and substitute teachers are aware of transgender students' preferred names; and district administrators will create a template within Skyward that can be used by all teachers when printing rosters and that will include both students' legal name and any other names entered in Skyward (such as preferred name).
>
> Additionally, the ***investigator*** recommended a ***corrective action step*** to ensure that the Respondent understands the important [sic] of positive teacher-student

relationships. Dr. Higgins will follow-up with you to schedule a meeting to discuss your reflections from this situation, identify what could have been done differently, and review expectations associated with the student-teacher relationship. A summary of conference will be provided to you following this meeting.

Despite their damning implications, the District cannot legitimately avoid the facts. The attempt to weasel out of including in the Policy AC investigation conduct which is not prohibited by Policy AC, and the attempt to avoid the fact that the investigator made a "preponderance of the evidence" determination under the Policy AC (of a manufactured violation), is further evidence of the District's targeting and attempt to "cancel" my client with discriminatory and retaliatory animus.

The "investigation" has failed to comply with Policy AC in numerous ways; perhaps none as telling as the investigator's failure to "create a report that summarizes the relevant evidence." On that basis alone, the appeal is warranted. As mandated by § 3 of Policy AC:

> "Within 30 working days of receiving the formal complaint, the investigator will conclude the investigation and create a report that summarizes the relevant evidence. For all complaints other than complaints alleging sexual harassment under Title IX: (a) the report also will include the investigator's determination as to whether the preponderance of the evidence shows that this policy was violated."

The investigator's determination expressly stated:

> **"the investigator determined that a preponderance of the evidence shows that Respondent referred to the Complainant by his legal name and using incorrect pronouns on one or a couple occasions during the school year …"**

Any reasonable observer must conclude that the investigator found, by a preponderance of the evidence, that the respondent violated the Policy AC when the Policy AC does not prohibit the conduct the investigator found to be a violation (and then found cause for corrective/disciplinary action. It is revealing that the District, through its Compliance Coordinator, does not appear constrained by the Policy, the facts, the truth, or the law. I sincerely hope this is not endemic to the administration.

How can the District argue in good conscience that this determination was not made on the Policy AC complaint? And how can the District then state, "the Professional Negotiated Agreement between the District and NEA Shawnee Mission governs the rights of the District's Professional Employees (including teachers) with regard to corrective or disciplinary action, including written reprimands. As outlined in Article V(K), 'disciplinary actions are non-grievable except for nonrenewal, termination, or suspension,'" after stating, "This is not a disciplinary process (no disciplinary action against a respondent in connection with a Policy AC complaint would take place under after [sic] the conclusion of the investigation/grievance process) …"? (*See* attached email)

The appeal in this matter was timely filed under Policy AC § 4. There is no provision in the Policy AC for the District's Compliance Coordinator to refuse to "process" the appeal. Policy AC § 4 states: "No later than 20 working days after receiving notice of the appeal, the appeal officer or Compliance Coordinator simultaneously will give written notice to the parties of the ***appeal officer's determination and a concise rationale for the result***."

3

The Policy AC states, "All policies of the Board of Education and administrative procedures shall be enforced in compliance with this policy." The District is obligated to conduct the appeal under both the Board Policy AC and the dictates of fundamental fairness. A refusal to do so would further bolster the conclusion that Ms. Sullivan is being targeted, harassed, and retaliated against for, at the very least, engaging in protected conduct under Board Policy AC, and in violation of Article III(F) for protected expression under Article V(N)(1) of the PNA.

My client will comply with the disciplinary step to schedule a meeting with Dr. Higgins but it is under protest.

Please confirm receipt of this email.

Thank you,

Fritz

Fritz Edmunds
EDMUNDS LAW OFFICE, LLC
11715 West 101st Street
Overland Park, Kansas 66214
913-669-3000
Fax: 913-894-1000
████████████████████



**Website:**
**https://edmundslaw.com/**

This email and any files transmitted with it may contain confidential and/or attorney-client privileged information intended only for the individual in the salutation. If you are not that person, you could face criminal or civil penalties for disseminating this email. Please notify the sender immediately and delete it from your system if you have received this email by mistake.

---

**From:** Rachel England <████████████████████>
**Sent:** Thursday, March 16, 2023 9:50 AM
**To:** ████████████████████; Caedran Sullivan <████████████████████>
**Cc:** Jeremy Higgins <████████████████████>; John McKinney <████████████████████>; Joe Gilhaus <████████████████████>
**Subject:** Re: Appeal - Caedran Sullivan

Mr. Edmunds,

The District is unable to process the request for an appeal that you submitted on behalf of Ms. Sullivan. The request does not fall under the Policy AC appeal process, given that it does not seek to appeal the determination on the Policy AC complaint. The determination was that a preponderance of the evidence did not show that Policy AC was violated by the Respondent, or that Respondent treated the Complainant differently or negatively because of or based on his gender identity or the fact that he is transgender.

It appears that the request seeks to appeal a separate determination made regarding the job performance of Ms. Sullivan, specifically that corrective action and coaching is needed to ensure that Ms. Sullivan understands the important of positive teacher-student relationships.  Ms. Sullivan has been informed that Dr. Higgins will meet with her to discuss her reflections from this situation, identify what could have been done differently, and review expectations associated with the student-teacher relationship.  She has further been informed that a summary of conference will be provided to her following this meeting.  Please note that the Professional Negotiated Agreement between the District and NEA SM governs the rights of the District's Professional Employees (including teachers) with regard to corrective or disciplinary action, including written reprimands.  As outlined in Article V(K), "disciplinary actions are non-grievable except for non-renewal, termination, or suspension."

**Rachel England**
General Counsel

Shawnee Mission School District
8200 W. 71st Street
Shawnee Mission, KS 66204
smsd.org  |  913.993.6403



---

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <▮▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Date:** Tuesday, March 14, 2023 at 4:04 PM
**To:** Joe Gilhaus <▮▮▮▮▮▮▮▮▮▮▮▮>
**Cc:** Rachel England <▮▮▮▮▮▮▮▮▮▮▮▮▮▮>, Jeremy Higgins <▮▮▮▮▮▮▮▮▮▮▮▮▮▮>, John McKinney <▮▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Subject:** Appeal - Caedran Sullivan

NOTICE: Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Dr. Gilhaus:

Please find the attached appeal letter on behalf of one of your excellent teaches, my client, Caedran Sullivan.

Thank you,

Fritz

Fritz Edmunds
EDMUNDS LAW OFFICE, LLC
11715 West 101st Street
Overland Park, Kansas 66214
913-669-3000
Fax: 913-894-1000
▮▮▮▮▮▮▮▮▮▮▮▮



**Website:**

5

[https://edmundslaw.com/](https://edmundslaw.com/)

This email and any files transmitted with it may contain confidential and/or attorney-client privileged information intended only for the individual in the salutation. If you are not that person, you could face criminal or civil penalties for disseminating this email. Please notify the sender immediately and delete it from your system if you have received this email by mistake.

May 14, 2023

Dr. Hubbard & Ms. England:

This will serve as notice that I am electing to enforce my right of arbitration under the Professional Negotiated Agreement (PNA) Article VII § 3, LEVEL THREE, for a grievance which was not resolved at a prior level.

**Specifically, the issues for arbitration are**:

1.  The Shawnee Mission School District (the "District" or "SMSD") did not afford me an "appropriate investigation" of a Complaint under the PNA Article V § J(1), as more fully shown in the attached documents.

    The District has hidden the alleged "complaint" and not revealed its alleged contents, depriving me the opportunity to sufficiently respond. To this day, the District has refused to produce any alleged complaint, under false pretenses, preventing me from determining authenticity. The District also would not provide notice of any violations claimed in the alleged complaint against me before I was interrogated by the Investigator and General Counsel who blindsided me with four (4) alleged violations, and then made a determination faulting me for saying that I did not recall, on the spot, the alleged conduct (which was not violative of any policy). Even in the interrogation, the alleged violations in the alleged complaint were nonspecific and did not provide times, dates, witnesses, or places, and the General Counsel peppered me with false claims and arguments while the Investigator interrogated me. The investigation itself was an attempt to smear me and tarnish my reputation for opposing the District's divisive, politically-charged Corwin DEI program. The District spread false allegations to alleged "witnesses," based on blatantly false, frivolous allegations, including shameful allegations of "racism" due to alleged "racist" books and an alleged "racist" flag in my classroom, all without evidence – no alleged book titles and no photo or description of the alleged flag – and unrelated to alleged discrimination based on gender identity.

    If a complaint signed by a student actually exists, the District knew, or should have known, that the alleged complaint was retaliation from a specific student for discipline resulting from the student's class disruption through repeated and open defiance of a cell phone policy that the District's principal had instructed us to more rigorously enforce. The investigation was also inappropriate because the District should have dismissed any alleged complaint from that student as without merit, considering "the surrounding circumstances; the nature of the conduct; the relationships between the parties involved; past incidents; and the context in which the alleged incidents occurred," the standard as defined under the Policy AC. Moreover, I was not afforded the presumption that "the respondent did not engage in any prohibited conduct," as required by the Policy AC.

    More importantly, The District's own policy was not followed in the "investigation" when the Investigator stated a preponderance of the evidence supported a violation of a phantom policy that did not, and still does not, exist. Even if the alleged conduct occurred

(which I disputed), there were no grounds for a claim of "discrimination" in any alleged complaint. There was no allegation of different outcomes for the alleged student complaintant based on any alleged "discrimination." The investigation was also tainted by conflict of interest as more fully stated in the attached documents.

The SMSD expressly stated at the outset of the interrogation that "no disciplinary action would take place" as a result of the Policy AC complaint investigation. The Policy AC itself states: "Employees who violate this policy will be subject to discipline, which may include a conference, written reprimand, required training or other measures, reassignment, unpaid leave, and termination." The discipline in this case included a conference, a written reprimand, and required training or other measures, though the District phrased the discipline as a "corrective action." The District asserts on one hand that the "corrective action" was nongrievable because it was discipline under the PNA Article V § K(4), however, that directly contradicts the District stated position that no disciplinary action would take place. At the same time, the District stated the "corrective action" was not discipline. This was not an appropriate investigation of a complaint, as required by the PNA.

In the interrogation and follow-up, I repeatedly stated that I try every day to foster good relationships with my students because I believe it is important, and that I earnestly attempt to use their preferred names and preferred pronouns. The District's discipline/corrective action was essentially that I need to foster good relationships with my students through the use of preferred names and preferred pronouns. There was zero evidence that I do not.

The investigation was also not a "proper investigation" under the PNA because of the District's March 8 determination that a "corrective action" was warranted as a result of the Policy AC investigation, as more fully shown in the attached documents. I was written up for using the student's "legal name" and "incorrect pronouns" that matched the student's biological sex "on one or a couple of occasions." I disputed those allegations because I attempt to use students' preferred names and preferred pronouns and because the alleged conduct did not violate the Policy AC or any other District policy. But the Investigator failed to afford me the presumption that I did not engage in any prohibited conduct, faulted me for not recalling the alleged incident (which I disputed), and then fabricated a violation of a policy that did not exist in order to write me up (because of my opposition to the DEI programming that I have long stated is divisive and harmful). The "corrective action" was for violation of a policy that did not and does not exist.

In fact, the District cited a need for a policy regarding preferred names and pronouns *after* my interrogation, as part of the investigation that is the subject of this grievance (admitting an absence of any policy).

2. I also dispute the District's May 10, 2023 conclusion that my April 30, 2023 Grievance was a Level Two Grievance, as more fully set forth in the attached documents. My Level One Grievance was filed on the only form available (the "appropriate" Grievance forms, according to the District, are not online or readily accessible and were not provided when

requested). My April 30 Grievance was the first level dispute under the PNA and included the term "Grievant." It also referenced Article II(B) of the PNA, and was timely filed with my principal as required by the PNA for First Level Grievances ("A Professional Employee shall within ten (10) days after the occurrence of the event which is the subject of the grievance, filed a written grievance with their principal or immediate supervisor, whichever has the authority to deal most effectively with the grievance.").

3. I also dispute the District's April 24, 2023 conclusion that my March 24, 2023 Grievance is not grievable, as more fully set forth in the attached documents. The reason given by the District was the PNA does not expressly provide for grievance of the failure to follow Board Policy AC specifically. But the PNA does provide for grievance of failure to follow Board Policy generally.

4. And I dispute the District's March 16, 2023 determination that my March 14, 2023 appeal under the Policy AC could not be processed, as more fully shown in the attached documents. It is unreasonable for the District to assert that the discipline/"corrective action" was not a result of the Policy AC complaint investigation.

5. Each of the preceding steps was required to exhaust my remedies under the Policy AC and the PNA, so this Level Three Grievance is timely filed within fifteen (15) days after the District's May 10, 2023 (disputed) determination that my April 30 filing was not a Level One Grievance. It is also within fifteen (15) days following the fifth (5th) day after my April 30, 2023 Level Two Grievance, making this Level Three Grievance timely pursuant to the PNA Article VII § 2(e).

**The specific remedy requested**:

    A. The Policy AC complaint process should be followed and the slanderous allegations of "racism" leveled during the "investigation" should be addressed in an "appropriate investigation" as required by the PNA Article V § J(1). Accordingly, all documents from the investigation or placed in my file should be revealed and produced.

    B. In an appropriate investigation, all conflicts of interest should be recognized and documents or communications from those with any conflict should be produced.

    C. In an appropriate investigation, the instigating "complaint" allegedly filed under Policy AC and the "concise rationale" called for in the Policy AC should be produced.

    D. In an appropriate investigation, the District should be held to its express statement that no discipline will result and the "corrective action" should be removed from my file (with an apology) and my name should be cleared.

**The arbitrators selected from the Kansas Academy of Mediators & Arbitrators are**:

1. Jerry Bales
2. Henry R. Cox
3. Richard T. Merker
4. Jerry Palmer
5. Vance C. Preman

6. William H. Sanders Jr.
7. Leland M. Shurin
8. John Tongier
9. Roger Warren
10. Bruce Waugh

Thank you,

*Caedran Sullivan*
AP English Teacher
Shawnee Mission North

GAE-E

**CONFIDENTIAL**

SHAWNEE MISSION PUBLIC SCHOOLS

**CERTIFIED EMPLOYEE COMPLAINT FORM**

**Level: (2) (3) (4)**
(circle one to indicate level of complaint)

Name of Employee                              Building                    Assignment

Caedran Sullivan                              Shanee Mission North        Full-time Teacher, English

A.  Date incident for complaint occurred: __March 16, 2023__

B.  Detailed statement of facts upon which complaint is based: __Complaintant was denied the benefit of the__ __SMSD Board Policy AC by the Administration in violation of the Professional Negotiated Agreement__ __between the Board of Education and the NEA Shawnee Mission (the "PNA") when the Administration__ __failed to follow the Policy AC grievance process procedures, failed to acknowledge conflicts of interest__ __and then failed to follow the Policy AC appeal process, all in violation of Article II(B) of the PNA.__

C.  Resolutions sought: __Complaintant (or Grievant) requests that Administration follow the Policy AC which__ __expressly states "All policies of the Board of Education and administrative procedures shall be enforced__ __in compliance with this policy," as more fully stated in the attached exhibits. In sum, Complaintant or__ __Grievant would like her appeal under the Policy AC heard so that her name is cleared.__

___J. Caedran Sullivan___                              ___3/24/23___
(signature)                                        (date)

Date Received: _____

Resolution by administrator:_____

_____

_____

_____

Signature _____

Date _____

Procedure:          Level 2 – Principal/Supervisor
                    Level 3 – Associate Superintendent
                    Level 4 – Superintendent

Exhibit
Adopted: 11-8-04.