**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JENNIFER CAEDRAN SULLIVAN,

     Plaintiff,

     v.

USD 512 SHAWNEE MISSION, et al.,

     Defendants.

Case No. 24-2491-DDC-BGS

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff's Motion to Compel (Doc. 90). Plaintiff seeks an order compelling additional discovery responses and production related to Defendants' responses to Plaintiff's First Requests for Production, including disputes regarding redactions, privilege assertions, the adequacy of Defendants' supplemental responses, the completeness and organization of Defendants' document production, and the existence and production of certain interview recordings. Defendants oppose the motion, arguing they have substantially complied with their discovery obligations through supplemental responses and document productions. *See* Doc. 97. Having reviewed the parties' briefing and exhibits, the Court grants the motion in part and denies it in part for the reasons set forth below.[1]

### I.    Background

The Court has previously summarized the factual background of this case in detail in prior

---

[1] The Court notes at the outset that many of the issues raised in the motion appear to concern logistics or ancillary matters—such as Bates-number clarification, missing pages, inaccessible links, and whether particular materials have already been produced—that likely could have been narrowed, if not resolved, through a substantive telephone conference between counsel. Defendants acknowledge that no such conference occurred after Plaintiff's counsel sought to schedule one. *See* Doc. 97, at 7–10. Counsel are reminded that the meet-and-confer obligation requires a meaningful good-faith effort to resolve or narrow discovery disputes before seeking Court intervention. Going forward, the Court expects counsel to confer directly and substantively before presenting disputes to the Court.

orders and will not repeat that full recitation here. *See* Docs. 53, 59. Instead, the Court limits the following background to the facts and procedural history relevant to the present discovery dispute.

Plaintiff, a teacher employed by Unified School District No. 512, brings claims arising out of her employment and the District's response to certain student complaints and internal investigations conducted in early 2023. *See generally* Doc. 44. The case was initiated on October 28, 2024, and Plaintiff later filed an amended complaint asserting claims against the District and numerous individual defendants. *See* Docs. 1, 29. The amended complaint prompted motions to dismiss, which the Court resolved in part, narrowing the claims in the case. *See* Doc. 59.

Following the court's ruling on the motions to dismiss, several claims remain. Plaintiff proceeds on her Title VII claims against the District, including a retaliation claim based on her alleged opposition to race-based DEI training and a hostile-work-environment claim based on allegedly race-based workplace conduct. Plaintiff also asserts claims under 42 U.S.C. § 1983, including a First Amendment retaliation claim, as well as other constitutional claims arising from the alleged conduct of District officials. In addition, certain state-law claims remain. These claims generally concern Defendants' actions, communications, and decision-making in connection with investigations and Plaintiff's employment.

On November 26, 2025, the Court entered its scheduling order and the parties proceeded into discovery. *See* Doc. 65. Plaintiff served her First Requests for Production on January 5, 2026. Doc. 70. Defendants served written responses and objections in early February 2026. *See* Doc. 72. The ensuing productions and supplemental responses occurred over several months:

- Defendants served supplemental responses on February 17, 2026. Plaintiff states Defendants served supplemental responses and partial productions on February 17 and March 20, 2026, and produced documents on February 23, February 24, March 18, March 27, April 3, and April 22, 2026. *See* Doc. 90-5, at ¶ 3.

- Defendants state they produced approximately 5,900 pages of documents on February 17, 2026, and approximately 180 additional pages on February 24, 2026.

2

Doc. 97, at 3.

- After Plaintiff complained that some pages in the February 17 production were sideways or cut off, Defendants re-produced approximately 5,900 pages on March 27, 2026.  Doc. 97, at 3.

- Defendants state they re-produced approximately 637 pages of records containing student names on April 3, 2026.[2]  Doc. 97, at 3.  Defendants also state they produced a photocopied book excerpt on April 3, 2026, after obtaining permission from the author.  *Id.*, at 6.

- Defendants produced approximately 5,450 additional pages on April 22, 2026, which Defendants characterize as a production generated from Plaintiff's proposed ESI search terms rather than a production directly responsive to the First Requests for Production.  *See* Doc. 97, at 4, 7; *see also* Doc. 90-5, at ¶ 3.

One later production requires additional context.  Defendants contend the April 22, 2026 production was not made directly in response to Plaintiff's First Requests for Production, but instead resulted from email/ESI search terms Plaintiff proposed after counsel discussed narrowing searches for communications during a February 18, 2026 discovery call.  Doc. 97, at 7.  Defendants state the search terms included "Caedran," "Ms. Sullivan," "the Lion," "Lion," "Fritz Edmunds," "Mr. Edmunds," and "Heartlander," applied to emails to or from the originally named defendants, David A. Smith, and John McKinney, for the period January 1, 2021 through February 28, 2026.  *Id.* Defendants state they ran those searches and produced the resulting records on April 22, 2026.  *Id.* Plaintiff disputes Defendants' characterization of the April 22 production, arguing the search terms were offered to narrow the scope of disputed RFPs, not as a separate discovery request or expansion of discovery.  Doc. 100, at 2–3.  This disagreement informs several of the disputes addressed below, including redactions, inaccessible links, and whether the April 22 production was sufficiently organized and labeled.

---

[2] Plaintiff disputes Defendants' characterization of the April 3 production.  Plaintiff contends that, on April 3, Defendants produced only certain recordings and a 25-page manual, and that numerous redactions remained in the production.  *See* Doc. 100, at 1–2.  The Court does not resolve that factual dispute in this background section and instead addresses the appropriate relief below.

Against that production history, Plaintiff raised broader concerns regarding the sufficiency of Defendants' responses and objections, including issues related to the scope of objections, the timing and manner of production, and the withholding or redaction of documents. The Court directed the parties to meet and confer regarding these disputes and later held a pre-motion discovery conference on March 12, 2026. Doc. 80. At that conference, the Court addressed several issues, including Defendants' objections, the adequacy of their responses, and the handling of materials Defendants contend are subject to the Family Educational Rights and Privacy Act ("FERPA"). Doc. 81. The Court directed Defendants to supplement certain discovery responses and to produce unredacted documents where no FERPA objections were received. Defendants thereafter served supplemental responses and made additional productions. Despite these efforts, disputes remained regarding the adequacy of Defendants' responses, the completeness and organization of document production, the propriety of redactions, and the sufficiency of Defendants' privilege log.

Plaintiff now moves to compel additional responses and production, asserting that Defendants have not fully complied with their discovery obligations or the Court's prior directives. Plaintiff also seeks an award of attorney's fees and expenses under Fed. R. Civ. P. 37(a)(5). Briefing on the motion is ripe and the Court is prepared to rule.

## II.    Legal Standard

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which permits discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevance is construed broadly to encompass any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying

4

*Oppenheimer* after the 2015 amendment).  But discovery must also be proportional to the needs of the case.

In determining proportionality, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  These proportionality considerations are case-specific, and no single factor is necessarily controlling.  *See Atl. Specialty Ins. Co. v. Midwest Crane Repair, LLC*, No. 20-4013-JAR-ADM, 2020 WL 5118067, at *6 (D. Kan. Aug. 31, 2020) (discussing Rule 26(b)(1)'s proportionality factors).  The Court must also limit discovery that is unreasonably cumulative or duplicative, obtainable from a more convenient or less burdensome source, or outside the scope permitted by Rule 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C).

Under Rule 37, a party may move for an order compelling discovery responses or production.  Fed. R. Civ. P. 37(a).  The party seeking discovery bears the initial burden to establish relevance where relevance is not readily apparent on the face of the request.  *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).  Once relevance is established, the party resisting discovery bears the burden to support its objections and show why the requested discovery is improper.  *Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014).  Conclusory or boilerplate objections are insufficient.  *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670–71 (D. Kan. 2004).  Likewise, generalized objections asserted only "to the extent" they may apply to particular requests are disfavored because they fail to meaningfully identify the basis for withholding responsive information.  *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 651 (D. Kan. 2006).

5

### III.    Analysis

The parties' briefing raises a number of overlapping discovery issues concerning Defendants' written responses, document productions, redactions, and privilege assertions.  Although Plaintiff frames many of these issues broadly, the disputes generally fall into several categories: (1) redactions and the production of unredacted materials; (2) the general adequacy of Defendants' objections and supplemental responses; (3) the form and organization of Defendants' document production; (4) alleged promised-but-unproduced documents; (5) the production of interview recordings; (6) the sufficiency of Defendants' privilege log and related privilege assertions; and (7) Plaintiff's request for attorney's fees and expenses.  The Court addresses each category in turn.

### a.    Redactions and Unredacted Production

Plaintiff's arguments regarding redactions and unredacted production primarily concern documents produced in response to requests seeking investigative materials, student complaints, witness statements, and related communications.  Plaintiff contends Defendants continue to withhold or redact responsive information despite the Court's March 12, 2026 order which, in part, stated:

> As to materials Defendants contend are educational records subject to the Family Educational Rights and Privacy Act ("FERPA"), Defendants represent that notice has been provided to the affected students.  To the extent no objections are received, Defendants shall produce the unredacted documents to Plaintiff on or before April 3, 2026.  If any objections are received from students, Defendants shall promptly notify the Court.  Defendants are further directed to supplement their discovery responses, consistent with the Court's guidance on the record, on or before March 20, 2026.  After Plaintiff has had an opportunity to review Defendants' supplemental responses and any unredacted FERPA documents produced, the parties shall meet and confer regarding any remaining disputes.

Doc. 81.

Plaintiff argues Defendants failed to comply with the Court's prior order requiring production of unredacted documents where no FERPA objections were received.  In her motion, Plaintiff asserted that Defendants continued to impose approximately 863 redactions across the

6

earlier 6,485-page production and additional redactions in the April 22, 2026 production, which Plaintiff states consisted of 5,450 pages. Doc. 90, at 2; Doc. 90-5 at ¶¶ 3, 6(a), 6(e). Plaintiff further argued that Defendants had not provided privilege-log entries or other particularized justification for those redactions. Doc. 90, at 2; Doc. 90-5 ¶ 6(a). In reply, Plaintiff specifically disputes Defendants' representation that they re-produced approximately 637 pages of records containing student names on April 3, 2026. Plaintiff states that the April 3 production consisted only of: (1) a recording of Plaintiff's March 3, 2023 investigation interview; (2) a 25-page manual Bates-stamped USD006486–USD006510; (3) a January 18, 2023 recording Bates-numbered USD006511; and (4) a February 1, 2023 recording Bates-numbered USD006512. Doc. 100, at 1. Plaintiff also contends the documents she received still contain numerous redactions and that Defendants' privilege log does not identify Bates numbers corresponding to those redactions. *Id.*, at 1–2.

Defendants respond that they complied with the Court's March 12 directives and produced unredacted copies of documents previously redacted solely on FERPA grounds. Defendants acknowledge that one email may have inadvertently remained redacted but represent that an unredacted version of the same document was otherwise produced. Defendants further assert that any remaining redactions are based on attorney-client privilege or work-product protection, not FERPA.

Defendants also distinguish between the productions made in response to Plaintiff's Requests for Production and the later April 22, 2026 production generated from Plaintiff's proposed ESI search terms. According to Defendants, many of the documents generated through those search terms contained student information unrelated to Plaintiff's claims. Defendants state that, if an email contained the name of a student who had already received FERPA notice and had not objected, the student's name was not redacted. But if an email contained the name of a student who had not received FERPA notice, the name was redacted pending notice and an opportunity to

7

object.  Defendants further state that no FERPA notice was sent where the student information had no bearing on Plaintiff's claims.  Defendants maintain that any remaining redactions are either temporary FERPA redactions subject to that notice process, redactions of student information Defendants contend is unrelated to Plaintiff's claims, or redactions based on attorney-client privilege or work-product protection.

The Court concludes that limited clarification and supplementation are warranted, but the present record does not support Plaintiff's broader contention that Defendants failed altogether to comply with the Court's March 12, 2026 directives.  The Court's prior order contemplated that relevant documents redacted solely on FERPA grounds would be produced in unredacted form where no FERPA objections were received following the notice process.  FERPA does not create an evidentiary privilege barring discovery of student records; rather, it imposes procedural protections governing disclosure of educational records.  *See Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1180 (D. Kan. 2018); *C.T. v. Liberal Sch. Dist.*, No. 06-2093-JWL, 2008 WL 394217, at *4 (D. Kan. Feb. 11, 2008) ("[E]ducational records may be disclosed without running afoul of FERPA so long as the school district notifies the parent or student of the disclosure and a protective order restricts the use of such information to this litigation only.").

Here, Defendants produced unredacted versions of at least some documents previously redacted on FERPA grounds and continued supplementing productions following the Court's March 12 conference.  Defendants further represent that most remaining redactions are based on attorney-client privilege or work-product protection rather than FERPA, and that certain additional FERPA redactions remained temporarily in place pending notice procedures associated with Plaintiff's proposed ESI search terms.  Although Plaintiff challenges the volume of remaining redactions, the Court does not find on the present record that Defendants broadly disregarded the Court's prior directives.

8

At the same time, limited clarification and supplementation remain appropriate.  First, the parties appear to disagree about whether Defendants actually produced the approximately 637 pages of records that Defendants contend were re-produced on April 3, 2026, after the FERPA notice period expired.  Defendants state they produced those materials; Plaintiff's reply states that the April 3 production consisted only of certain recordings and a 25-page manual and that the anticipated unredacted documents were not included.  This does not appear to present a substantive objection for the Court to resolve because Defendants represent that they intended to comply with the Court's prior order.  But it does reflect a disconnect regarding what was transmitted.  Accordingly, Defendants shall either verify that the approximately 637 pages were produced on April 3, 2026, including identifying the manner of production, or re-produce those materials in the same form in which Defendants contend they were previously produced.

Second, the Court understands Defendants' position to be that not all student-name redactions are in the same category.  To the extent responsive information relevant to Plaintiff's claims remains redacted solely on FERPA grounds after notice was provided and no objection was received, that information shall be produced in unredacted form.  But to the extent Defendants maintain redactions because the redacted student information has no bearing on Plaintiff's claims and therefore was not subject to FERPA notice, Defendants need not remove those redactions at this time.  Defendants shall, however, provide sufficient clarification to allow Plaintiff to understand that basis for the redaction without disclosing the student information itself.

Third, Plaintiff attached Defendants' privilege log as an exhibit to the motion, and the Court has reviewed it.  The log generally identifies the date, author, recipients, subject matter, privilege asserted, and stated basis for withholding certain communications.  But it does not appear to identify the redactions in produced documents that Defendants now contend are based on attorney-client privilege or work-product protection.  Privilege-log requirements apply to redacted documents as

9

well as wholly withheld documents.  *H & L Assocs. of Kansas City, LLC v. Midwestern Indem. Co.*, No. 12-2713-EFM-DJW, 2013 WL 5774844, at *5 (D. Kan. Oct. 25, 2013) (recognizing that documents redacted on the basis of privilege must be identified in a privilege log).  Accordingly, Defendants shall serve a supplemental privilege log limited to any redactions in produced documents that are withheld on the basis of attorney-client privilege or work-product protection.[3]  The Court otherwise declines to order wholesale production of all documents in entirely unredacted form.

### b.  Adequacy of Defendants' Objections and Supplemental Responses

Plaintiff's arguments concerning the adequacy of Defendants' written responses and objections primarily concern RFP Nos. 1, 5, 8, 9, 16, 17, 19, 20, 23, 25, 29, 30, 33, and 36.  Doc. 90, at 3.  Plaintiff argues Defendants asserted improper boilerplate objections throughout their responses, including repeated objections based on overbreadth, undue burden, relevance, and proportionality.  Plaintiff also criticizes Defendants' repeated use of copy-and-paste language, noting that several responses referred to "Defendant College," a non-party to this case, in connection with FERPA objections.  *Id.*

Defendants' original responses began with seven "General Objections."  Doc. 90-1, at 1–2. General Objection No. 1 objected to the requests to the extent they sought information outside the scope of Rules 26(b) and 34(a), including information Defendants contended was not relevant or proportional to the needs of the case.  *Id.* at 1.  General Objection Nos. 2 and 4 objected to the requests to the extent they imposed obligations beyond those required by Rules 26 and 34.  *Id.* at 1–2.  General Objection No. 3 objected to Plaintiff's "Definitions and Instructions" to the extent they

---

[3] For privilege-based redactions, the supplemental log should identify the page or redaction at issue with reasonable specificity; state the date, author, recipients, and general subject matter of the communication or material; identify the privilege or protection asserted; and provide enough information to allow Plaintiff to assess the claim without revealing the privileged or protected information itself.  *See* Fed. R. Civ. P. 26(b)(5)(A); *Leftwich v. City of Pittsburg, Kansas*, No. 16-2112-JWL-GLR, 2017 WL 1338838, at *2 (D. Kan. Apr. 12, 2017).

exceeded Rule 34. *Id.* at 2.  General Objection No. 5 asserted attorney-client privilege, insurer-insured privilege, work-product protection, and other privileges or immunities. *Id.*  General Objection No. 6 asserted FERPA, privacy, and related objections. *Id.*  And General Objection No. 7 objected to the requests to the extent they sought information outside the relevant time period. *Id.*

Defendants then stated that their responses were "expressly limit[ed]" to the scope permitted by Rules 26 and 34 "based on [their] General Objections," which were "incorporated to the extent applicable into each and every one" of the individual responses.  Doc. 90-1, at 2.[4]  Many individual responses then included the phrase, "As limited by these objections and the General Objections set forth above," or a materially similar formulation, before stating whether documents would be produced or whether Defendants were aware of responsive documents. *See, e.g.*, Doc. 90-1, at 3–6, 8–13, 15–16.  Several FERPA-based responses also contained language referring to "Defendant College," even though no college is a party to this case. *See* Doc. 90-1, at 7, 9–11, 16.

This was not a model approach to say the least.  General objections incorporated into multiple individual responses, conditional "to the extent" objections, and boilerplate language tend to obscure whether responsive materials are actually being withheld and, if so, on what basis.  Rule 34 requires a responding party to state objections with specificity and to state whether any responsive materials are being withheld on the basis of an objection.  Fed. R. Civ. P. 34(b)(2)(B)–(C). Courts in this District have repeatedly criticized generalized and conditional objections. *See Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 538 (D. Kan. 2006) (finding general "to the extent" objections "tantamount to asserting no objection at all"); *Fish v. Kobach*, No. 15-9300-JAR-JPO, 2016 WL 893787, at *1 (D. Kan. Mar. 8, 2016) ("General objections are improper and will not be tolerated."); *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, 341 F.R.D. 291, 302 (D. Kan. 2022)

---

[4] The original responses used this "General Objections" incorporation language, or materially similar language, in response to RFP Nos. 1, 2, 4, 5, 6, 8, 9, 13, 14, 16, 17, 18, 19, 20, 23, 25, 33, and 38. *See* Doc. 90-1, at 3–16.

(noting that conditional objections "are invalid and unsustainable").  Likewise, once relevance is established, a party resisting discovery bears the burden to support its objections with specificity; boilerplate assertions of burden, overbreadth, or disproportionality are insufficient.  *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014); *McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 646 (D. Kan. 2003).

Defendants' first supplemental responses did not fully resolve the problem.  Rather than clearly stating which objections were withdrawn, maintained, or served as the basis for withholding documents, Defendants repeatedly responded: "Without waiving any prior objections or limitations raised," followed by Bates ranges or other production information.  *See, e.g.*, Doc. 90-2, at 1–8.  Defendants later served second supplemental responses after the Court's March 12, 2026 pre-motion discovery conference.  In those second supplemental responses, Defendants stated: "Per the Court's Order (ECF No. 81), General Objection Nos. 1-7 together with the references to such General Objections in the responses to the individual Request Nos. 1-2, 4-6, 8-9, 13-14, 16-20, 23, 25, 33, & 38 are withdrawn."  Doc. 90-3, at 1.  Defendants also stated they were "not withholding any privileged documents in response to any individual Request unless identified on a privilege log." *Id.*  Defendants rely on that supplementation in opposing the motion.  Doc. 97, at 4.  Plaintiff replies that Defendants withdrew only some boilerplate objections and did not withdraw all objections Plaintiff challenged.  Doc. 100, at 3.

The Court agrees with Plaintiff that Defendants' original responses were unnecessarily confusing and, in several respects, inconsistent with the specificity required by Rule 34.  But the question on the present motion is not whether Defendants' original responses could have been clearer.  The question is whether Plaintiff has shown that further relief is warranted now.  On that point, the Court concludes Plaintiff has not met her burden to compel additional production based solely on this category of objections.  Although the party resisting discovery generally bears the

burden to support its objections once challenged, the moving party must at least identify the discovery relief sought and address the objections it asks the Court to overrule. *See Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670–71, n.37 (D. Kan. 2004) (explaining that the moving party must address each boilerplate objection it seeks to challenge, thereby bringing the objection "into play," and that objections not addressed in the motion need not be defended and will stand); *Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (explaining that, in most cases, the moving party need only file a motion to compel and draw the Court's attention to the relief sought, after which the resisting party must support its objections with specificity).

Here, Plaintiff identified RFP Nos. 1, 5, 8, 9, 16, 17, 19, 20, 23, 25, 29, 30, 33, and 36 and challenged Defendants' use of generalized, incorporated, and conditional objections. *See* Doc. 90, at 3. But Defendants later withdrew General Objection Nos. 1–7 and withdrew the references to those objections in numerous individual responses. Doc. 90-3, at 1. Defendants also clarified that privileged materials are being withheld only to the extent identified on the privilege log. *Id.* Thus, although Defendants' original objections were not appropriate, much of the objection language Plaintiff challenged is no longer operative.

The remaining question is whether Plaintiff has shown that additional relief is warranted based on any objection still being maintained. Although a moving party generally need only draw the Court's attention to the relief sought before the resisting party must support its objections, the moving party must still identify the objections it asks the Court to overrule and bring those objections "into play." *Sonnino*, 221 F.R.D. at 670–71 n.37 (D. Kan. 2004) (explaining that the moving party must address each boilerplate objection it seeks to challenge). Plaintiff broadly asks the Court to overrule Defendants' objections to more than a dozen RFPs, but she does not identify a specific remaining objection that continues to withhold responsive materials after Defendants' second supplemental responses, nor does she identify what additional production should be

13

compelled based solely on Defendants' objection language. *See* Doc. 90, at 3. The concrete disputes Plaintiff does identify—such as those pertaining to redactions, privilege assertions, missing pages, linked materials, promised inspection materials, and interview recordings—are addressed separately elsewhere in this Order.

Accordingly, the Court declines to categorically overrule Defendants' remaining objections or require wholesale revision of all written responses based on Plaintiff's generalized challenge to Defendants' objection language. To the extent specific disputes remain regarding redactions, privilege assertions, missing or inaccessible materials, or the completeness of particular productions, those issues are addressed in the corresponding sections below.

### c.   Form and Organization of Defendants' Production

Plaintiff challenges the manner and organization of Defendants' document production, including Defendants' use of Bates-range references, the production of certain linked or inaccessible materials, and the difficulty in determining which produced documents correspond to particular requests for production.

### i.   Rule 34 Organization and Identification of Responsive Materials

Plaintiff argues Defendants' productions were not organized or labeled in a manner that corresponds to the RFPs, resulting in what Plaintiff characterizes as a large and disorganized document dump. Plaintiff further argues Defendants produced certain Bates-numbered ranges without identifying the requests to which those materials purportedly respond, including Bates ranges USD000010–000071, USD000373–000381, USD000384–000388, and USD006302–006485.

Defendants respond that many of Plaintiff's complaints either have already been addressed or concern materials outside the scope of the original RFPs. Defendants note they re-produced approximately 5,900 pages of documents after Plaintiff complained that some pages appeared sideways or partially cut off during processing. Defendants further contend that the productions

14

were Bates-labeled and supplemented on a rolling basis.  Defendants also represent that they can supplement their responses to further identify certain Bates-numbered productions if necessary.

The Court concludes that limited supplementation is warranted.  Rule 34 requires documents to be produced either as they are kept in the usual course of business or organized and labeled to correspond to the categories in the request.  Fed. R. Civ. P. 34(b)(2)(E)(i).  A producing party may satisfy the rule through either method.  *See MGP Ingredients, Inc. v. Mars, Inc.*, No. 06-2318-JWL-DJW, 2007 WL 3010343, at *3 (D. Kan. Oct. 15, 2007).  Consistent with Defendants' representation in their briefing, Defendants shall supplement their responses to identify by Bates number the documents corresponding to the requests to which they relate to the extent such clarification has not already been provided.  Defendants shall also supplement their responses to identify the request(s) corresponding to Bates ranges USD000010–000071, USD000373–000381, USD000384–000388, and USD006302–006485, or otherwise clarify why those materials were produced.

### ii.    Missing, Inaccessible, or Linked Materials

Plaintiff also challenges the completeness and usability of portions of Defendants' production.  Plaintiff identifies Bates page USD005598 as missing from Defendants' production.  Doc. 90, at 3; Doc. 90-5 at ¶ 6(b).  Plaintiff also argues that Defendants' productions contain numerous broken or authorization-restricted hyperlinks, including more than 125 such links in the earlier production and additional inaccessible links in the April 22, 2026 production.  Doc. 90, at 3; Doc. 90-5, at ¶ 6(c).  In reply, Plaintiff contends there are 1,249 inaccessible links associated with Defendants' PDF productions and identifies USD007335 as an example of a document that references a report about Plaintiff through a link Plaintiff cannot access.  Doc. 100, at 2.

Defendants respond that many of the hyperlinks Plaintiff identified are not relevant to Plaintiff's claims.  According to Defendants, the links include materials such as the District's Student 504 handbook, bond-project information, out-of-district transfer applications, meal-benefit plans,

McKinney-Vento materials, special-education service-provider materials, and links appearing in email signature blocks.  Doc. 97, at 5.  Defendants also state that several links are to Policy AC, which Defendants contend has already been produced.  *Id.*  Defendants further represent that the only links on Plaintiff's list that appeared relevant to this lawsuit related to investigative reports and that "all documents connected with those links have been produced to Plaintiff except for written statements by five (5) students."  *Id.*

The Court agrees that hyperlinks embedded in produced ESI present a distinct issue.  A hyperlink is not automatically equivalent to an email attachment, and Rule 34 does not require a producing party in every case to reprocess a production so that all hyperlinks remain active or so that hyperlinked materials are preserved as family attachments.  *See Nichols v. Noom Inc.*, No. 20-CV-3677 (LGS) (KHP), 2021 WL 948646, at *4 (S.D.N.Y. Mar. 11, 2021) (explaining that "a hyperlinked document is [not necessarily] an attachment" because a hyperlink "may or may not be necessary to the communication"); *UAB "Planner5D" v. Meta Platforms, Inc.*, No. 19-cv-03132-WHO (SK), 2024 WL 4190879, at *1 (N.D. Cal. Aug. 26, 2024) (recognizing that hyperlinked documents are not the same as email attachments because locating and reviewing hyperlinked documents may require additional effort); *In re Insulin Pricing Litig.*, No. 23-md-3080 (BRM) (RLS), 2024 WL 2808083, at *7 (D.N.J. May 28, 2024) (addressing hyperlink production through feasibility, burden, and proportionality principles).

But that does not mean Defendants may leave responsive linked materials inaccessible without further explanation.  Rule 34 requires ESI to be produced in the form in which it is ordinarily maintained or in a reasonably usable form.  Fed. R. Civ. P. 34(b)(2)(E)(ii).  And Rule 34 requires a responding party to state whether responsive materials are being withheld on the basis of an objection. Fed. R. Civ. P. 34(b)(2)(C).  Courts addressing hyperlink disputes have approved a practical approach: if a requesting party identifies particular documents containing hyperlinks for

16

which the linked material cannot be located, the producing party may be required to provide the linked document or identify where it was previously produced. *See Nichols*, 2021 WL 948646, at *3–4 (declining to treat hyperlinked documents as attachments but approving a targeted procedure under which the producing party would provide the hyperlinked document or its Bates number when the requesting party could not locate or identify the corresponding hyperlinked document in the production).

That approach is appropriate here. The Court does not order Defendants to make hyperlinks active within the ESI production, to reproduce all documents with functioning hyperlinks, or to produce every hyperlinked item merely because the parent document was produced. Some hyperlinks may lead to generic District materials, public webpages, email-signature links, folders, or other materials that are not themselves responsive or proportional to the needs of this case. But where a produced document contains a hyperlink to responsive material—particularly investigative reports, written statements, or other materials concerning Plaintiff or the investigations at issue—Defendants must either produce the linked material, identify where it was previously produced, or state the specific basis for withholding it.

Accordingly, Defendants shall produce Bates page USD005598 if it has not already been produced. Defendants shall also review the inaccessible or authorization-restricted hyperlinks Plaintiff has identified by Bates number and, for each such hyperlink, either: (1) produce the linked material if it is responsive, nonprivileged, and has not already been produced; (2) identify by Bates number where the linked material was previously produced; or (3) state the specific basis for not producing the linked material. The Court otherwise declines to order wholesale reproduction of Defendants' ESI production or to require Defendants to make embedded hyperlinks active.

17

### d. Promised-but-Unproduced Documents

Plaintiff also argues Defendants failed to produce documents they previously agreed would be made available for inspection in response to RFP Nos. 4 and 10. RFP No. 4 sought policies, handbooks, guidelines, directives, and training materials regarding the use of student names and pronouns by staff, including related drafts, redlines, emails, and board-level or administrative changes and approvals. In their February 17, 2026 supplemental response, Defendants stated that non-privileged documents had previously been produced as USD000001–USD000009 and that additional documents were produced as USD000393–USD000504. Defendants further stated that "[a]dditional documents will be made available for review and inspection at a mutually agreeable date."

RFP No. 10 sought policies, requirements, training, or guidelines concerning monitoring or observing teachers' PLC meetings, classrooms, or teams, including directives related to monitoring Plaintiff's ELA PLC meetings and related drafts, redlines, emails, or approvals. Defendants' February 17, 2026 supplemental response stated that documents were produced as USD005119–USD005383 and that "[a]dditional documents will be produced or made available for review and inspection at a mutually agreeable date."

The issue was discussed during the March 12, 2026 pre-motion discovery conference. Plaintiff's counsel stated that Defendants had said much of the material was copyrighted and would not be copied, and that Plaintiff was trying to schedule a date to inspect the materials or have them sent out to be copied. Defense counsel responded that the materials were copyrighted published books by outside entities, that they were available for inspection at defense counsel's office, and that Defendants could not wholesale copy the books without implicating copyright concerns. The Court stated that counsel should be able to coordinate a date and time for inspection and observed that making documents available for inspection is an appropriate response under Rule 34.

18

Plaintiff now contends that, when the inspection occurred, the materials made available consisted entirely of published books that were not responsive to RFP Nos. 4 or 10.  Plaintiff therefore asks the Court to compel Defendants to produce all responsive documents promised in the February 17 supplemental responses.  Defendants respond that they produced Bates-numbered documents responsive to both requests and that the additional materials referenced in their supplemental responses were the copyrighted books made available for inspection.  Defendants further represent that the books were made available for review on March 18, 2026; that, after Plaintiff reviewed the books, Plaintiff asked for one book to be photocopied; that Defendants obtained authorization from the author to make a copy; and that Defendants produced the photocopied material on April 3, 2026.  Defendants state they have produced or otherwise made available all materials identified in response to RFP Nos. 4 and 10.

The Court declines to order further production on the present record.  Defendants' supplemental responses did not simply promise future production; they identified Bates ranges of documents produced in response to the requests.  Although the responses do not separately label which Bates-numbered materials are "policies," "training materials," or other responsive categories, they do identify productions responsive to RFP No. 4 and RFP No. 10.  Defendants then made the additional copyrighted materials available for inspection, which is a permissible method of production under Rule 34.  And after Plaintiff requested a copy of one inspected book, Defendants obtained authorization and produced the requested material.

Plaintiff disagrees that the books were responsive.  But if Defendants identified the books as responsive training or related materials and made them available for inspection because they could not wholesale copy them, Plaintiff has not shown that Defendants failed to comply with their discovery obligations merely because Plaintiff disagrees with Defendants' assessment after inspection.  Nor has Plaintiff identified additional specific policies, training materials, or monitoring

19

materials known to exist that Defendants have refused to produce.  Plaintiff's reply does not materially address Defendants' representation that other non-copyrighted responsive materials were already produced by Bates range or that Defendants produced the requested book excerpt after obtaining permission.  *See generally* Doc. 100.

On this record, Plaintiff has not established that additional responsive materials exist and are being withheld.  The Court cannot compel production based on speculation that additional documents may exist, particularly where Defendants represent they have produced or otherwise made available all materials identified in response to RFP Nos. 4 and 10.  *See Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 620 (D. Kan. 2005) (recognizing the court cannot compel production of documents that do not exist or are not within the responding party's possession, custody, or control).  Accordingly, the Court denies Plaintiff's request for further production regarding the inspection materials associated with RFP Nos. 4 and 10.

### e.  Interview Records

Plaintiff's arguments concerning interview recordings primarily concern RFP Nos. 19 and 20, which seek materials related to the District's investigations and witness interviews concerning Plaintiff and the underlying student complaints.  RFP No. 20 specifically seeks documents relating to the Second Investigation, including "all interview notes, recordings, transcripts, and summaries relating to students, staff, or Ms. Sullivan."  Doc. 90-2, at 6.  Plaintiff contends Defendants have not produced all responsive recordings generated during the investigations, including recordings of witness interviews from the Second Investigation.  Doc. 90, at 4.

Plaintiff has offered some context for why she believes additional recordings may exist. During the March 12, 2026 pre-motion discovery conference, Plaintiff's counsel raised both recordings and investigator notes, explaining that Plaintiff viewed the materials as investigative records rather than student education records and that the recordings were important because there

were issues about what was said during the investigation interviews.  Defense counsel responded that he did not believe any investigative materials had not been produced, but also stated, there may be some other recordings, and explained that Defendants viewed those materials as FERPA records because the investigation arose from a student complaint of discrimination.  In her reply, Plaintiff also points to an email exchange in which Plaintiff's counsel asked Defendants to produce audio and visual recordings of interviews, and Defendants' counsel responded that audio recordings not requiring FERPA notice had been produced and that "[t]he others will be produced if no FERPA objections are received/raised."  Doc. 100, at 2.

Defendants disagree with Plaintiff's characterization.  They state they are "not withholding any recordings based on FERPA," that they have "produced all audio recordings [they are] aware of," and that, should any additional recordings later be located, they will be produced.  Doc. 97, at 5. Defendants also state they are not aware of any concession that additional responsive recordings exist.  *Id.*

The Court understands why there is confusion.  The March 12 discussion and the email exchange cited in Plaintiff's reply could reasonably have led Plaintiff to believe additional recordings existed and would be produced after the FERPA notice period expired.  But the present record does not establish that additional responsive recordings currently exist and are being withheld.  The Court cannot compel production of documents or recordings that do not exist or are not within Defendants' possession, custody, or control.  *See Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 620 (D. Kan. 2005).  And although investigative interview recordings concerning the underlying factual events would generally be discoverable if they exist and are responsive, *see Mitchell v. Archer Daniels Midland Co.*, 329 F.R.D. 178, 181 (C.D. Ill. 2019), Plaintiff has not met her burden to show that additional responsive recordings exist beyond those Defendants represent have already been produced.

That said, given the ambiguity created by the parties' prior communications and the March 12 discussion, limited clarification is warranted.  Defendants shall serve a written certification confirming that, after reasonable inquiry, all responsive audio recordings currently known to Defendants and within their possession, custody, or control have been produced.  If Defendants are aware of any responsive recordings that previously existed but are no longer available, or if any responsive recordings are being withheld on any basis, Defendants shall say so and identify the basis for that position.  Defendants remain subject to their ongoing duty to supplement under Rule 26(e) if additional responsive recordings are later located.  The Court otherwise declines to order further production of interview recordings at this time.

### f.  Privilege Log

Plaintiff's privilege-related challenge is directed primarily at the adequacy of Defendants' privilege log, not at the sufficiency of the written responses themselves.  The written responses nevertheless provide useful context.  During the March 12, 2026 pre-motion discovery conference, the Court noted that Defendants' earlier responses did not always make clear whether a privilege objection was actually being asserted to a particular RFP or whether documents were being withheld on that basis.  The Court therefore directed Defendants to supplement their responses so Plaintiff could determine which RFPs involved documents withheld on privilege grounds and then evaluate the privilege log in that context.

Defendants served second supplemental responses on March 20, 2026.  In those responses, Defendants withdrew General Objection Nos. 1–7 and the references to those general objections in several individual responses, which were discussed earlier in detail.  Doc. 90-3, at 1.  Defendants also stated that they were "not withholding any privileged documents in response to any individual Request unless identified on a privilege log."  *Id.*  As relevant here, Defendants asserted attorney-client privilege and/or work-product objections to RFP Nos. 2, 4, 19, and 20 and stated that

22

documents withheld based on those privileges were identified on Defendants' privilege log. *Id.* at 2–3. By contrast, Defendants' second supplemental response to RFP No. 14 states that "[n]o documents have been withheld based upon attorney-client or work product privilege." *Id.* at 2.

Against that background, Plaintiff argues the privilege log remains inadequate. Plaintiff contends the log uses repetitive and generalized descriptions that do not permit meaningful assessment of the asserted privileges on a document-by-document basis. Plaintiff also argues that certain communications involving Defendant Rachel England may reflect ordinary compliance, investigative, or administrative functions rather than privileged legal communications because England served in both legal and compliance-related roles. Finally, Plaintiff argues certain privilege-log entries are difficult to reconcile with Defendants' written responses and productions, particularly given Plaintiff's position that communications between Higgins and England during the Second Investigation bear on documents sought by RFP No. 14. *See* Doc. 90, at 4–6.

Defendants respond that this issue was discussed during the March 12, 2026 conference and that they believe the privilege log is adequate. Doc. 97, at 6. Defendants maintain that the challenged materials are protected by the attorney-client privilege and/or work-product doctrine.

Rule 26(b)(5)(A) requires a party withholding information on privilege grounds to assert the privilege and describe the nature of the withheld materials in a manner that enables other parties to assess the claim. The party asserting privilege bears the burden to provide sufficient information to permit evaluation of each element of the asserted privilege. *Leftwich v. City of Pittsburg, Kansas*, No. 16-2112-JWL-GLR, 2017 WL 1338838, at *2 (D. Kan. Apr. 12, 2017). A privilege log generally should identify the nature of the document, the individuals involved in the communication, the date, the basis for the asserted privilege, and sufficient contextual information to assess whether the privilege applies. *See id.* Although an inadequate privilege log may, in some circumstances, result in waiver, "courts often reserve such a penalty for those cases where the offending party unjustifiably

delayed in responding to the discovery requests or acted in bad faith." *Sprint Commc'ns Co. L.P. v. Big River Tel. Co., LLC*, No. 08-2046-JWL, 2009 WL 2878446, at *1 (D. Kan. Sept. 2, 2009).

The Court recognizes that privilege logs using identical or conclusory descriptions may be inadequate where the log provides no concrete facts about the nature or subject matter of the withheld documents. *See Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 234–35 (S.D.W. Va. 2015) (finding log inadequate where the same conclusory descriptions were used throughout and the log failed to provide concrete facts regarding the nature or subject matter of the documents); *Slocum v. Int'l Paper Co.*, 549 F. Supp. 3d 519, 525 (E.D. La. 2021) (finding repeated descriptions that documents were created "for the purposes of seeking legal advice" insufficient where the log provided no factual basis to assess the privilege); *Chevron Corp. v. Weinberg Grp.*, 286 F.R.D. 95, 99–100 (D.D.C. 2012) (criticizing database-generated privilege descriptions that repeated generic language and failed to distinguish substantive privileged communications from nonprivileged transmittal communications). Those cases do not establish that repetition in a privilege log is fatal. Rather, the question remains whether the log, considered as a whole, provides enough information to permit assessment of the asserted privilege without revealing the privileged information itself.

Communications involving England require additional care because Defendants acknowledge she had both legal and compliance-related responsibilities. District of Kansas cases recognize that legal advice must predominate for the attorney-client privilege to apply, and that the privilege does not extend to communications where legal advice is merely incidental to business, compliance, or administrative advice. *See In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2017 WL 1106257, at *9 (D. Kan. Mar. 24, 2017). Likewise, communications are not privileged merely because an attorney is copied or involved. *See Williams v. Sprint/United Mgmt. Co.*, 245 F.R.D. 660, 667 (D. Kan. 2007). But communications involving non-attorney employees or administrators may

24

remain privileged if they were made for the purpose of securing or transmitting legal advice and were kept within those with a need to know. *See Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 640–44 (D. Kan. 2006); *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1269 n.46 (D. Kan. 2008).

In camera review is not automatic merely because privilege is disputed. Whether to conduct in camera review rests within the Court's discretion. *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 621 (D. Kan. 2014).

> Such review may be useful if there is a genuine dispute between the parties as to the accuracy of the withholding party's description of certain documents. Such review is not, however, to be routinely undertaken, particularly in a case involving a substantial volume of documents, as a substitute for a party's submission of an adequate record in support of its privilege claim.

*Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 621 (D. Kan. 2014) (citing *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 475 (S.D.N.Y. 1993)).

The Court must have some basis for conducting in camera review. *Id.* Courts consider the facts and circumstances of the particular case, including the volume of materials to be reviewed, the importance of the allegedly privileged information, and whether review is likely to assist in resolving the privilege dispute. *See Burton v. R.J. Reynolds Tobacco Co.*, 167 F.R.D. 134, 141 n.3 (D. Kan. 1996). Where the problem is that a privilege log does not provide enough information to evaluate the asserted privilege, but waiver or compelled production is not warranted, the Court may require supplementation instead. *See Sprint Comm'ns Co. L.P. v. Big River Tel. Co., LLC*, No. 08-2046-JWL, 2009 WL 2878446, at *1–3 (D. Kan. Sept. 2, 2009).

Applying those principles, the Court declines to order wholesale production, find waiver, or conduct in camera review on the present record. Defendants bear the burden to establish the asserted privileges and protections, and the current record would benefit from additional clarification. But the appropriate remedy at this stage is supplementation, not categorical production

or in camera review of all communications involving England.  *See Sprint Commc'ns Co. L.P*, 2009 WL 2878446, at *1–3 (denying motion to compel production of allegedly privileged documents and, rather than finding waiver, ordering the withholding party to supplement its privilege log with more detailed and specific entries sufficient to permit assessment of the privilege claims); *Black & Veatch Corp.*, 297 F.R.D. at 621 (explaining that in camera review is discretionary and should not be used routinely as a substitute for an adequate record supporting privilege).  Because the concerns identified can be addressed through a supplemental privilege log or supporting declaration, the Court will require clarification before considering any further privilege-related relief.

The log identifies the date, document type, author, recipients, general purpose or subject matter, and asserted protection.  But because Defendants assert both attorney-client privilege and work-product protection across the log, and because some entries involve England in light of her dual legal and compliance-related roles, Defendants shall supplement the privilege log or serve a supporting declaration clarifying the asserted basis for withholding.

First, Plaintiff shall provide Defendants a list of each entry she disputes along with a stated basis.  She should only dispute the entries that are truly contested and not broadly dispute the privilege log or entire categories.  Defendants remain responsible for supporting any privilege or protection they continue to assert.  For each disputed entry, Defendants shall clarify whether they assert attorney-client privilege, work-product protection, or both.  If Defendants assert work-product protection, they must provide sufficient nonprivileged information to show that the material was prepared in anticipation of litigation and not merely in the ordinary course of business, compliance, administration, or investigation.  For disputed entries involving England, Defendants shall also provide sufficient nonprivileged context to identify the capacity in which England was acting and to permit Plaintiff to assess whether the communication was made primarily for the purpose of obtaining or providing legal advice.

This ruling does not require Defendants to reveal privileged information, and the Court does not decide at this stage whether any particular logged communication is privileged. The Court also does not require Defendants to cross-reference each privilege-log entry to every RFP to which it may relate. Rule 26(b)(5)(A) only requires enough information to assess the privilege claim; it does not impose an independent requirement that each logged document be matched to each applicable discovery request. *Cf. Aviles v. S&P Glob., Inc.*, 583 F. Supp. 3d 499, 504 (S.D.N.Y. 2022). The Court therefore denies Plaintiff's request for waiver, wholesale production, or in camera review, but grants the motion to the extent Defendants must provide the clarification described above.

### g. Fees

Plaintiff requests attorney's fees and expenses under Rule 37(a)(5), arguing Defendants' deficient responses, delayed supplementation, and continued production issues necessitated the present motion to compel. Defendants oppose any fee award, noting they served written responses, made multiple productions and supplemental responses, and attempted to address several issues throughout the discovery process. Defendants also contend many disputes involved FERPA, privilege assertions, and ESI-production issues rather than a wholesale refusal to produce responsive materials.

Although the Court grants portions of Plaintiff's motion, the Court declines to award expenses under Rule 37(a)(5).[5] When a motion to compel is granted in part and denied in part, Rule 37(a)(5)(C) permits the Court to apportion reasonable expenses in a just manner, but it does not

---

[5] Rule 37(a)(5) governs payment of expenses for motions to compel. If a motion is granted, or if the requested discovery is provided after the motion is filed, the Court generally must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses unless the movant failed to confer, the nondisclosure was substantially justified, or other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(A). If a motion is denied, the same rule generally requires the movant to pay the opposing party's reasonable expenses unless the motion was substantially justified or other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(B). If, as here, the motion is granted in part and denied in part, the Court may apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C).

require a fee award.  *See Williams*, 245 F.R.D. at 674 (declining to award expenses where the motion to compel was granted in part and denied in part and each of the parties contributed to the need for court intervention); *N.U. v. Wal-Mart Stores, Inc.*, No. 15-4885-KHV, 2016 WL 3654759, at *20 (D. Kan. July 8, 2016) (denying fees where mixed results reflected both sides' failure to effectively work together to resolve or narrow discovery disputes); *Gassaway v. Jarden Corp.*, 292 F.R.D. 676, 689 (D. Kan. 2013) (declining fees where motion was granted in part and denied in part).

The Court concludes that each side should bear its own expenses.  Plaintiff obtained some relief, but the Court denied other requested relief.  Many issues were intertwined with legitimate disputes over FERPA, privilege, ESI, and the organization and usability of rolling productions.  At the same time, several disputes likely could have been narrowed or avoided through more direct and substantive conferral before motion practice.  Under these circumstances, the Court finds that apportioning expenses would not be just.  Plaintiff's request for attorney's fees and expenses is therefore denied.

## IV.    Conclusion

For the reasons discussed above, Plaintiff's Motion to Compel is granted in part and denied in part.  The Court also denies Plaintiff's request for attorney's fees and expenses under Rule 37(a)(5).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 90) is **GRANTED in part and DENIED in part**, consistent with the rulings set forth herein.

**IT IS FURTHER ORDERED** that, on or before **June 11, 2026**, Plaintiff shall provide Defendants a list identifying each privilege-log entry she disputes and briefly stating the basis for each challenge.  Plaintiff shall identify disputed entries individually and in good faith and shall not broadly dispute entire categories of entries wholesale.

**IT IS FURTHER ORDERED** that, on or before **June 25, 2026**, Defendants shall:

1) Either verify that the approximately 637 pages Defendants contend were produced on April 3, 2026, were in fact transmitted to Plaintiff, including identifying the manner of production, or re-produce those materials in the same form in which Defendants contend they were previously produced.

2) Produce any responsive information relevant to Plaintiff's claims that remains redacted solely on FERPA grounds where FERPA notice was provided and no objection was received.

3) To the extent Defendants maintain redactions because the redacted student information has no bearing on Plaintiff's claims and therefore was not subject to FERPA notice, provide sufficient clarification to allow Plaintiff to understand that basis for the redaction without disclosing the student information itself.

4) Serve a supplemental privilege log, or a supporting declaration if appropriate, addressing each privilege-log entry Plaintiff specifically disputes.  For each disputed entry, Defendants must clarify whether they assert attorney-client privilege, work-product protection, or both.  If Defendants assert work-product protection, they must provide sufficient nonprivileged information to show that the material was prepared in anticipation of litigation and not merely in the ordinary course of business, compliance, administration, or investigation.  For disputed entries involving Rachel England, Defendants must also provide sufficient nonprivileged context to identify the capacity in which England was acting and to permit Plaintiff to assess whether the communication was made primarily for the purpose of obtaining or providing legal advice.

5) Serve a supplemental privilege log limited to any redactions in produced documents that are withheld on the basis of attorney-client privilege or work-product protection, to the extent those redactions are not already adequately identified on Defendants' existing privilege log or addressed by the supplementation required above.

6) Supplement their responses to identify by Bates number the documents corresponding to the requests to which they relate to the extent such clarification has not already been provided, including clarification regarding Bates ranges USD000010–USD000071, USD000373–USD000381, USD000384–USD000388, and USD006302–USD006485.

7) Produce Bates page USD005598 if it has not already been produced.

8) Review the inaccessible or authorization-restricted hyperlinks identified by Plaintiff by Bates number and, for each such hyperlink, either: (a) produce the linked material if it is responsive, nonprivileged, and has not already been produced; (b) identify by Bates number where the linked material was previously produced; or (c) state the specific basis for not producing the linked material.

9) Serve a written certification confirming that, after reasonable inquiry, all responsive audio recordings currently known to Defendants and within their possession, custody, or control have been produced. The certification shall also state whether

29

Defendants are aware of any responsive recordings that previously existed but are no longer available, or whether any responsive recordings are being withheld on any basis.

**IT IS FURTHER ORDERED** that Plaintiff's request for attorney's fees and expenses under Fed. R. Civ. P. 37(a)(5) is **DENIED**.

**IT IS SO ORDERED.**

Dated June 4, 2026, at Wichita, Kansas.

/s/ BROOKS SEVERSON
Brooks G. Severson
United States Magistrate Judge