**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JENNIFER CAEDRAN SULLIVAN,

Plaintiff,

v.

USD 512 SHAWNEE MISSION, et al.,

Defendants.

Case No. 24-2491-DDC-BGS

**MEMORANDUM AND ORDER**

Four discovery motions are before the Court: Plaintiff's Motion for Protective Order to Preclude Deposition of Plaintiff's Trial Counsel (Doc. 138); Plaintiff's Second Motion to Compel Discovery (Doc. 139); Defendants' Motion for Protective Order concerning a federal investigation of Unified School District No. 512 (Doc. 140); and Plaintiff's later Motion to Strike Defendants' Reply in support of Doc. 140 or, alternatively, for leave to file a sur-reply (Doc. 147). For the reasons explained below, the Court grants Plaintiff's motion for protective order (Doc. 138), grants in part and denies in part Plaintiff's second motion to compel (Doc. 139), grants in part and denies in part Defendants' motion for protective order (Doc. 140), and denies Plaintiff's motion to strike or for leave to file a sur-reply (Doc. 147).

## I. Relevant Background

Plaintiff Jennifer Caedran Sullivan is a teacher employed by Unified School District No. 512 (the "District"). Her operative Second Amended Complaint names the District and fifteen individuals, each sued in both an individual and official capacity, and asserts eleven claims arising from student complaints, District investigations conducted in early 2023, resulting employment actions, and alleged retaliation. Doc. 44; Doc. 59, at 1. Plaintiff also challenges alleged District

practices concerning students' preferred names and pronouns and disclosure of a student's gender identity or transgender status to the student's parents. *See generally* Doc. 44.

The District Judge's ruling on Defendants' motions to dismiss narrowed the claims and capacities in which the individual Defendants remain, but all sixteen Defendants remain parties. *See* Doc. 59, at 42–44. The District Judge dismissed all official-capacity claims as duplicative of the claims against the District. *Id.* at 8–10, 42–44. The surviving claims are:

- Plaintiff's Title VII retaliation and hostile-work-environment claims against the District;
- three claims under 42 U.S.C. § 1983 against the District and Defendants Jeremy Higgins, Rachel England, Michelle Hubbard, and David Ewers, which are:
    - First Amendment retaliation based on Plaintiff's published "Exposé Articles,"
    - unconstitutional conditions based on free exercise of religion, and
    - a separately construed direct free exercise claim;
- Plaintiff's KPRFA claims against the District and all fifteen individual Defendants in their individual capacities; and
- Plaintiff's breach-of-contract claim against the District.

*Id.* at 11–14, 20, 28–40, 42–43. The District Judge also held that Plaintiff plausibly alleged an informal District custom or widespread practice concerning preferred names and pronouns for purposes of municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Doc. 59, at 33–35. Plaintiff's request for injunctive relief remains viable against the District, Higgins, England, Hubbard, and Ewers. *Id.* at 40–43.

Discovery has been extensive and contentious. The Court entered a Scheduling Order on November 26, 2025, and a Protective Order on December 12, 2025. Docs. 65, 68. On June 4, 2026, the Court issued a Memorandum and Order granting in part and denying in part Plaintiff's first motion to compel (the "June 4 Order"). Doc. 110. Among other rulings, the June 4 Order established a two-step process for the parties' privilege-log dispute. By June 11, Plaintiff was

required to identify each disputed entry and briefly state the basis for the challenge, "individually and in good faith," without broadly disputing entire categories wholesale. *Id.* at 26–28. The June 4 Order required clarification concerning the protections and privileges asserted and England's role in the communications involving her. It also directed Plaintiff to identify her disputed entries and the basis for her challenges so Defendants could evaluate them and supplement further when necessary. Doc. 110, at 26–29. As explained below, the Court clarifies the distinction between those obligations in resolving the present motion. The June 4 Order imposed separate supplementation requirements concerning redactions and several categories of production. *Id.* at 28–30.

Plaintiff's position statement preceding a July 14 discovery conference first advised the Court that Plaintiff believed Defendants had not complied with portions of the June 4 Order. *See* Doc. 136, at 1, 4–5. At the conference, Defendants noted that they had filed several certificates of service reflecting supplemental productions. Plaintiff could not identify with precision which directives or productions remained deficient. The privilege-log issue was more concrete: Plaintiff represented that she had not received the supplementation due June 25, Defendants stated that they needed to investigate, and the Court could not locate a certificate showing service of that supplementation. The Court therefore directed Defendants to review the privilege-log directives and promptly serve anything the June 4 Order required that had not been served. *Id.* at 4.

The Court's July 14 Order placed the disputes on separate tracks. It authorized motion practice concerning three requests for production, Defendants' proposed deposition of Plaintiff's counsel, and Plaintiff's Rule 30(b)(6) Topic 17 and related requests concerning a Department of Education investigation. *Id.* at 2–4, 6. More background about these disputes will be given in the relevant sections below. For other alleged noncompliance with the June 4 Order, Plaintiff was required by July 20 to give Defendants a detailed written list identifying each remaining deficiency, the directive allegedly violated, and any applicable Bates number or range. Defendants then were to

investigate, cure, or explain each item, after which the parties were to send a joint email to chambers by July 27 identifying any unresolved compliance issues. *Id.* at 4–5.[1] The four motions now before the Court followed.

The Court first addresses Plaintiff's second motion to compel, separating the alleged violation of the June 4 Order from the disputes governed directly by Rules 26 and 34. It then addresses the two protective-order motions. Although those motions share Rule 26(c)'s governing standard, each presents a distinct dispute and is analyzed separately.

## II. Plaintiff's Second Motion to Compel (Doc. 139)

### A. Background

Plaintiff's motion combines several disputes. She contends that Defendants violated the June 4 Order concerning their privilege log and redactions and asks the Court to compel production of every logged document and 342 pages she believes remain improperly redacted. Doc. 139, at 1–6, 7–8. She also seeks relief concerning three written requests: Third Request for Production No. 6, concerning communications with identified DEI coordinators; Second Request for Production No. 3, concerning Defendants' disclosed witnesses; and Third Request for Production No. 2,[2] concerning complaints about other teachers and resulting employment actions. *Id.* at 5–8; Doc. 139-6, at 2–4. Finally, Plaintiff seeks documents and testimony concerning a federal investigation that are also the subject of Defendants' motion for protective order. Doc. 139, at 4–5, 7.

Those disputes require different analyses. The Court first addresses Plaintiff's allegations that Defendants failed to comply with the June 4 Order. It then applies Rules 26 and 34 to the three

[1] The July 14 conference also addressed Defendants' concerns about Plaintiff's production. Defendants ultimately filed no motion concerning those issues.

[2] The parties and the Court previously referred to this request as Third Request for Production No. 3, but the served request is numbered No. 2. *See* Doc. 136, at 3 & n.1; Doc. 139-6, at 2–3.

disputed requests for production. Consistent with the parties' agreement, the Court resolves the dispute concerning the federal investigation with Defendants' motion for protective order.

### B. Alleged Noncompliance with the June 4 Order

#### 1. Governing Standard and Procedural Posture

Rule 37(a)(3)(B)(iv) permits a party to move for an order compelling production when another party fails to produce documents requested under Rule 34. Rule 37(b)(2)(A) separately authorizes "further just orders" when a party disobeys a discovery order. Plaintiff primarily seeks production and other discovery, not a punitive sanction. The Court therefore treats this portion of her motion as a renewed motion to compel and determines whether Plaintiff has identified a directive in the June 4 Order and shown that Defendants failed to provide what it required. *See Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3743102, at *1, *4–7 (D. Kan. July 13, 2016) (addressing a second motion to compel under Rule 37(a) by comparing amended responses and a privilege log with an earlier discovery order and the governing rules).

The Court also may enforce the process it established to identify and narrow alleged noncompliance before motion practice. *See Coe v. Cross-Lines Ret. Ctr., Inc.*, No. 22-2047-EFM-ADM, 2022 WL 17338289, at *2 (D. Kan. Nov. 30, 2022) (declining to consider an argument not meaningfully raised during two pre-motion conferences and explaining that the conference requirement focuses and narrows discovery disputes); *Rowan*, 2016 WL 3743102, at *4 (treating a privilege-log challenge as waived when it was not raised during an earlier conference or motion). The Court therefore declines to decide compliance disputes not presented through the required procedure, except to clarify the limited privilege-log supplementation and response obligations addressed below.

**2. Compliance Issues Not Presented as Directed**

Plaintiff argues that Defendants violated the June 4 Order by leaving 342 pages improperly redacted. Her July 20 letter stated that Defendants had produced 38 documents totaling 43 pages in unredacted form and attached a screenshot identifying those files. Doc. 139-2, at 1–2, 6. But neither the letter nor its attachment identified by Bates number the documents that allegedly remained deficient or matched them to a particular directive in the June 4 Order. Plaintiff instead requested production of all previously redacted pages. *Id.* at 2. Defendants argue that the letter did not provide the notice the July 14 Order required and that Plaintiff then failed to participate in the joint chambers report. Doc. 145, at 1–3, 6–9; Doc. 145-1.

Plaintiff replies that a July 21 chambers email excused any further compliance with the July 14 process. Doc. 148, at 1. It did not. The July 21 email responded to Defendants' report about Plaintiff's production and supplemental responses. It authorized "Defendants" to file a motion concerning those issues by July 27, including a request to reopen Plaintiff's deposition for a limited purpose. Doc. 148-1, at 1–3. It neither addressed Plaintiff's claims of Defendants' noncompliance nor displaced the separate procedure established in the July 14 Order.

Plaintiff's July 21 email to Defendants did identify four pages (USD008240, USD008244, and USD008280–USD008281) and asked that Defendants produce or locate them. Doc. 145-6. Defendants reviewed those pages and served a supplemental privilege log on July 24. Doc. 139-8. Defendants also re-shared the electronic folder containing prior productions and re-produced documents on July 20. Docs. 145-4, 145-5. But Plaintiff did not provide the Bates-specific July 20 list required to tee up any broader redaction dispute, and the Court will not reconstruct that list from the motion. *See Coe*, 2022 WL 17338289, at *2; *Rowan*, 2016 WL 3743102, at *4. The asserted broader redaction issue is forfeited and will not be considered.

### 3. Privilege-Log Supplementation

Plaintiff contends that Defendants failed to provide the privilege-log supplementation required by the June 4 Order. Her June 11 submission identified eight asserted defects and assigned them to numbered entries or ranges in Defendants' 69-entry log. Five challenges applied to all entries, one applied to entries 1–42, and the remaining two concerned England-related entries and entry 65. Doc. 139-2, at 3–5. Plaintiff incorporated that submission into her July 20 letter and offered to accept production of ten emails as a compromise, while maintaining her broader objections. *Id.* at 1. She now asks the Court to compel production of every document on the log. *See* Doc. 139.

Defendants argue that Plaintiff's challenges remained too categorical to identify what further information was needed. They maintain that their descriptions adequately explain the asserted protections, that repetition alone does not make a privilege log inadequate, and that they remain willing to provide clarification if Plaintiff identifies a particular deficiency. Doc. 145, at 3–5. Defendants also point to their July 24 response to the proposed compromise: they reviewed the ten identified emails, explained that one had been misdated and already produced, and declined to produce the remaining nine. Doc. 145-2, at 1. They further argue that Plaintiff did not complete the July 14 Order's procedure for presenting unresolved compliance issues with the June 4 Order. Doc. 145, at 2–3.

The parties' disagreement requires clarification of the June 4 Order's intended scope. That Order identified two matters requiring additional information: Defendants' assertion of attorney-client privilege and work-product protection across the log, and England's capacity in communications involving her dual legal and compliance-related roles. Doc. 110, at 26, 29. For work-product claims, Defendants were to provide sufficient nonprivileged information for Plaintiff to assess whether the material was prepared in anticipation of litigation rather than in the ordinary

course of business. For England-related entries, Defendants were to provide sufficient context to allow Plaintiff to assess her role and determine whether obtaining or providing legal advice was the communication's primary purpose. *Id.*

The Order did not, however, sustain in advance every objection Plaintiff might later assert. Its direction that Plaintiff identify disputed entries and explain her objections was intended to permit Defendants to review those challenges and supplement further if appropriate. Identifying an entry as disputed did not itself establish a deficiency or require Defendants to accept Plaintiff's characterization of the communication. The June 4 Order could have stated more clearly how Defendants should respond when they disagreed that further supplementation was warranted. The Court therefore does not treat the absence of a supplement addressing every objection to all 69 entries as establishing the wholesale noncompliance Plaintiff alleges. The July 14 Order subsequently made the intended process more explicit: Defendants were to investigate the identified issues and either cure a deficiency or explain why they believed the prior Order had been satisfied. Doc. 136, at 4–5.

Neither side appears to have accomplished the intended purpose of that process. Plaintiff was to narrow and clarify the entries genuinely in dispute, and Defendants were to review the identified concerns and cure any deficiencies they determined warranted supplementation. Although Plaintiff identified some more specific concerns, many of her objections remained broadly directed to entire categories or the log as a whole. Doc. 139-2, at 3–5. And the record does not make clear what consideration Defendants gave those challenges beyond reviewing the ten emails proposed as a compromise. Doc. 145, at 3–5. Recognizing that its prior instructions could have been clearer, the Court provides the following directions to complete that process.

Rule 26(b)(5)(A) requires enough nonprivileged information to permit assessment of a claim of privilege or work-product protection. *See Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 649

(D. Kan. 2004) (requiring sufficient information to evaluate each element of the asserted protection and rejecting blanket claims). The two protections may overlap, but asserting both does not eliminate the need to provide information supporting each. Nor does England's status as an attorney resolve the capacity in which she acted in a particular communication.

The present briefing does not identify any supplementation which supplied the two clarifications the Court required. Defendants' July 24 email addressed the proposed ten-email compromise, but it did not provide the information required by the June 4 order. Doc. 145-2, at 1. The supplemental log served that day addressed redactions on four produced pages, not those issues in the original log. Doc. 139-8. The Court therefore will require that limited supplementation. Plaintiff's failure to complete the joint-report procedure does not prevent the Court from clarifying these existing requirements, but it does not entitle her to a ruling sustaining every additional challenge. *See Rowan*, 2016 WL 3743102, at *4 (requiring additional information for particular privilege-log entries despite rejecting the broader challenge).

Within 14 days of this Order, Defendants shall supplement the privilege log to provide the following information to the extent it has not already been supplied. For challenged entries asserting both attorney-client privilege and work-product protection, Defendants must clarify which protection or privilege they maintain. If they maintain work-product protection, they must provide sufficient nonprivileged information to identify the anticipated litigation and explain why the material was prepared in anticipation of that litigation rather than in the ordinary course of business. For challenged entries involving England, Defendants must identify the capacity in which she acted and provide sufficient nonprivileged context to assess whether obtaining or providing legal advice was the communication's primary purpose. This is consistent with the Court's June 4 Order. *See* Doc. 110, at 29.

By the same deadline, Defendants shall review Plaintiff's remaining June 11 challenges and make any further supplementation they determine is warranted. Defendants shall provide one supplemental privilege log incorporating both the clarification required above and any additional changes resulting from that review. Plaintiff need not submit another list of challenges, and Defendants need not revise an entry merely because Plaintiff disputed it. A common explanation may address objections or entries that genuinely share the same relevant facts, provided the response identifies the entries to which the explanation applies. Defendants may use a supporting declaration, if appropriate, to provide the appropriate context. *See Coe*, 2022 WL 17338289, at *3 (finding a privilege log and accompanying narrative sufficient and rejecting the contention that affidavits or sworn testimony were required). Defendants also must correct any known date or descriptive error, including the entry they contend corresponds to the email produced as USD11060. *See* Doc. 145-2, at 1.

Within seven days after receiving the supplemental privilege log, Plaintiff shall notify chambers by email, with defense counsel copied, whether any privilege-log issues remain unresolved. If issues remain, Plaintiff shall identify the disputed entries and briefly explain the remaining concerns. No additional conferral between counsel is required before that notification. If issues remain unresolved, the Court will arrange a telephone conference with counsel to determine the appropriate next steps.

This relief clarifies the required supplementation and response; it does not decide whether any particular document is privileged or protected. Nor does the present record warrant wholesale production or waiver. The parties disagree about the specificity of Plaintiff's challenges and the scope of the prior directive. That disagreement does not establish bad faith or justify treating every asserted protection as forfeited. *See Rowan*, 2016 WL 3743102, at *2 (explaining that a failure to satisfy Rule 26(b)(5) does not automatically waive privilege and that waiver is a harsh sanction).

Plaintiff's newly requested forensic inspection does not warrant different relief. Defendants represent that the log entry describing an April 23, 2023 Higgins-to-England email was misdated, should have been dated February 24, 2023, and corresponds to the email already produced as USD11060. Doc. 145-2, at 1. Plaintiff argues that the produced email does not match the logged description and infers that a separate April 23 email must exist. She therefore requests, for the first time in her reply, a court-appointed expert to inspect the District's email server. Doc. 148, at 1–2.

The record does not establish that a second email exists. Direct inspection of a responding party's electronic information system is not routine, and speculation about missing material does not alone justify the resulting intrusion. *See Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Nemaha Brown Watershed Joint Dist. No. 7*, 294 F.R.D. 610, 618–19 (D. Kan. 2013) (denying forensic imaging when the request rested on speculation and did not outweigh privacy concerns). The disputed date and description warrant correction and clarification, not forensic inspection on this record. That request is denied.

### C. The Three Requests for Production

#### 1. Governing Standard

Rule 26(b)(1) permits discovery of nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case. Proportionality turns on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevance is construed broadly, but it remains bound by the claims, defenses and proportionality. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

When a discovery request appears relevant on its face, the party resisting discovery must show that the request falls outside Rule 26(b)(1) or is of such marginal relevance that the potential

harm outweighs the presumption favoring disclosure. *Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 615–16 (D. Kan. 2005); *see also Tahirkheli v. Ascension Via Christi Hosp. Pittsburg, Inc.*, No. 24-2426-EFM-BGS, 2026 WL 221140, at *2 (D. Kan. Jan. 28, 2026). When relevance is not apparent on the face of the request, the requesting party must establish it. *Cardenas*, 230 F.R.D. at 615–16. The party asserting an objection based on vagueness, overbreadth, undue burden, or expense generally must support the objection, but a request's facial defects may supply the necessary basis for decision. *See Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670–71 (D. Kan. 2004).

Rule 34 requires a request for production of documents to "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). A response must state each objection with specificity and say whether responsive material is withheld on that basis. Fed. R. Civ. P. 34(b)(2)(B)–(C). Although a responding party ordinarily must answer a request to the extent it is not objectionable, a court need not rewrite an overbroad request when the request supplies no principled way to determine a proper scope. *See Schartz v. Unified Sch. Dist. No. 512*, No. 95-2491-EEO, 1996 WL 741384, at *1 (D. Kan. Dec. 18, 1996) (requiring no further response when the court could not determine a reasonable scope without speculation).

### 2. Third Request for Production No. 6: DEI-Coordinator Communications

Third Request for Production No. 6 seeks "[a]ll communications between USD 512 or its agents and the DEI Coordinators regarding Plaintiff since January 1, 2020." Doc. 139-6, at 3. Defendants objected that the request failed Rule 34's particularity requirement, that "regarding Plaintiff" was undefined, and that the request was irrelevant, overbroad, unduly burdensome, and duplicative. *Id.* at 3–4. Subject to those objections, Defendants limited their response to communications involving Chandra Beadleston's account and communications between Tyrone Bates and Ewers, and identified responsive documents at USD12614–USD12676. *Id.*

Plaintiff's concern at the July 14 conference was not a request for a ruling on those objections; it was whether Defendants had searched communications involving all three identified DEI coordinators, including communications with District employees other than Ewers. The July 14 Order therefore required Defendants to verify the scope of the search and conduct an additional search if the earlier search was narrower. Doc. 136, at 3–4. Plaintiff now asserts generally that responsive communications remain missing. Doc. 139, at 5. Defendants answer that they provided the required verification on July 20. Doc. 145, at 5–6; Doc. 145-3.

Defendants' July 20 email explained that the April 22 ESI production used the terms "Caedran" and "Ms. Sullivan"; Beadleston's account was separately searched for "Sullivan" and "Caedran"; Bates's closed account could not be searched directly; and prior searches captured emails to and from Bates, including communications with Ewers. Doc. 145-3. Plaintiff's motion does not acknowledge that response or identify a missing custodian, source, search term, or communication, and her reply does not address the issue. A party seeking an order compelling additional production must provide more than speculation or belief that responsive documents exist; the motion must offer adequate evidence that the production is incomplete. *See Univ. of Kan. v. Sinks*, No. 06-2341-KHV-GLR, 2007 WL 869629, at *3 (D. Kan. Mar. 22, 2007) (denying further production when the motion offered no adequate evidence contradicting counsel's representation that all responsive documents had been produced). Defendants provided the verification the July 14 Order required, and Plaintiff has not shown that the production remains incomplete. The motion is denied as to Third Request for Production No. 6.

**3. Second Request for Production No. 3: Witness Communications**

Second Request for Production No. 3 seeks "[s]tatements from and communications with each potential witness identified by Defendants in Defendants' Fed. R. Civ. P. 26 disclosures, including without limitation the parents of any minors identified." Doc. 139-5, at 2. Defendants

objected that the request is vague, ambiguous, unduly burdensome, overbroad, disproportionate, and potentially seeks privileged material. *Id.* They construed "statements" to mean written or recorded witness statements, produced those statements, and identified several Bates ranges. *Id.* Defendants also note that their disclosures identify approximately 64 people and that they have produced thousands of pages of searchable email from agreed custodians and terms. Doc. 145, at 9.

Plaintiff argues that Defendants improperly narrowed "communications" to written or recorded statements and that Defendants submitted no declaration quantifying their burden. Doc. 139, at 6; Doc. 148, at 2–3. Defendants answer that the request contains no subject-matter, custodian, or temporal boundary and, as written, reaches every communication with every disclosed person on any subject. Doc. 145, at 9.

The request is facially overbroad and disproportionate. Disclosure as a potential witness does not make every communication with that person relevant to a claim or defense. The request supplies no subject-matter boundary by which Defendants, or the Court, could distinguish communications about the events in suit from ordinary communications unrelated to the litigation. A declaration quantifying burden is unnecessary to establish the facial problem. *See Tahirkheli*, 2026 WL 221140, at *5–7. And as the Court advised the parties at the July 14 conference, it will decide the request as served rather than devise a new one during motion practice. *See* Doc. 136, at 3; *Schartz*, 1996 WL 741384, at *1 (declining to rewrite requests whose proper scope could not be determined without speculation). Defendants' overbreadth and proportionality objections are sustained, and the motion is denied as to Second Request for Production No. 3.

#### 4. Third Request for Production No. 2: Comparator Complaints and Discipline

Third Request for Production No. 2 seeks "[r]ecords of all student, parent, or teacher complaints about any other teachers at Shawnee Mission North since January 1, 2020, and records of any discipline of the teacher or adverse employment action as a result." Doc. 139-6, at 2.

Defendants objected that "complaint" is undefined and that the request fails Rule 34's particularity requirement, is overbroad, and is unduly burdensome because it reaches verbal and informal complaints on any subject about every other teacher over more than six years. *Id.* at 2–3. Defendants limited their response to formal Policy AC complaints similar to those involving Plaintiff and represented that no such complaint existed during the requested period. *Id.*

Plaintiff argues that complaints and discipline involving other teachers are relevant comparator evidence and that *Schartz* supports compelling the requested information. Doc. 139, at 6–7. Defendants answer that Plaintiff's request is not confined to teachers who engaged in comparable conduct, complaints of a comparable kind, or comparable employment decisions. Doc. 145, at 9–10.

*Schartz* illustrates the distinction. There, requests for all documents of all students who complained about a teacher or his performance violated Rule 34's particularity requirement, and the court required no further response because it could not determine a proper scope without speculation. 1996 WL 741384, at *1. The court separately compelled an interrogatory that precisely identified the proposed comparators and employment actions: employees at one high school who were suspended, placed on off-cycle evaluation, or reprimanded during a defined principal's tenure. *Id.* at *2–3.

Plaintiff's request resembles the overbroad document requests in *Schartz*, not the more precise interrogatory. A complaint about an unrelated subject does not become comparable merely because it concerns another teacher at the same school. Nor does the request identify the conduct, decisionmaker, policy, or employment action that would make another matter a useful comparator. Determining a narrower scope would require the Court to supply limitations Plaintiff did not serve. Defendants' reasonable-particularity, overbreadth, and undue burden objections are sustained, and the motion is denied as to Third Request for Production No. 2.

#### 5. Federal Investigation

The July 14 Order memorialized the parties' agreement that the discoverability and scope of the federal investigation materials sought through Second Request for Production No. 14 would be resolved through Defendants' motion for protective order. Doc. 136, at 2–3. The Court addresses that dispute in Section III.C below. Plaintiff's duplicative request for the same relief through her motion to compel is denied.

### D. Conclusion

Plaintiff's second motion to compel is granted only to the extent of the limited privilege-log clarification and response required in Section II.B.3. It is otherwise denied. When a motion to compel is granted in part and denied in part, the Court may apportion reasonable expenses. Fed. R. Civ. P. 37(a)(5)(C). In view of the mixed result, the parties' competing interpretations of the prior procedure, and the clarification provided in this Order, the Court declines to apportion expenses. Each side shall bear its own expenses related to Doc. 139.

## III. Motions for Protective Order (Docs. 138 and 140)

### A. Governing Standard

Rule 26(c)(1) permits the Court, for good cause, to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense." Available relief includes forbidding discovery, prescribing a different discovery method, or limiting inquiry to specified matters. Fed. R. Civ. P. 26(c)(1)(A), (C)–(D). If the Court denies protection in whole or in part, it may order discovery on specified terms. Fed. R. Civ. P. 26(c)(2).

The movant bears the burden to establish good cause by making a particular and specific factual showing; stereotyped or conclusory statements are insufficient. *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 583–84 (D. Kan. 2008); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (requiring "a particular and specific demonstration of fact, as distinguished from stereotyped and

conclusory statements"). The Court evaluates the requested protection in light of Rule 26(b)(1)'s relevance and proportionality limits. *See Arenas v. Unified Sch. Dist. No. 223*, No. 15-9359-JWL-TJJ, 2016 WL 6071802, at *2, *4 (D. Kan. Oct. 17, 2016). Confidentiality alone does not create a privilege or justify withholding otherwise discoverable material; an appropriate protective order ordinarily can address legitimate confidentiality concerns. *See Tahirkheli*, 2026 WL 221140, at *4 (compelling confidential material subject to an existing protective order); *Edelman Fin. Engines, LLC v. Mariner Wealth Advisors LLC*, No. 23-2515-HLT-BGS, 2025 WL 2374162, at *4 (D. Kan. Aug. 14, 2025) (relying on an existing protective order to safeguard confidential business information while permitting discovery).

### B. Plaintiff's Motion to Preclude the Deposition of Trial Counsel (Doc. 138)

#### 1. Background and the Parties' Positions

Rachel England is the District's general counsel and also served as Compliance Coordinator. In that role, she participated with Higgins in the second investigation of complaints against Plaintiff. She later communicated with Plaintiff and her counsel about Plaintiff's attempted appeal, grievance, and arbitration. Doc. 65, ¶ 2(j); Doc. 142, at 1–3. Fritz Edmunds represented Plaintiff during those pre-suit proceedings and remains her sole trial counsel in this action. Doc. 138, at 1–2.

Plaintiff deposed England both individually and as the District's Rule 30(b)(6) designee. During both examinations, Edmunds questioned England about communications between them, including a March 16, 2023 email concerning Plaintiff's attempted appeal and a March 13 letter Edmunds sent to another District administrator. Doc. 142, at 2–3; Docs. 142-1, 142-3. Defendants also deposed Plaintiff. During her deposition, Plaintiff deferred to counsel when asked what relief she sought through one of Edmunds's letters, whether Policy AC authorized an appeal, why certain actions harmed her, and why she believed her grievance should have been arbitrated. Doc. 142, at 3; Doc. 142-2. Defendants then noticed Edmunds's deposition without identifying subjects in the

notice. Doc. 117. Their response explains that they seek his "version of the facts surrounding his participation in the investigation and communications with Defendants," particularly England. Doc. 142, at 1–2.

Plaintiff argues that Defendants cannot satisfy the heightened standard for deposing opposing trial counsel because the written communications, Plaintiff, England, and other District employees provide alternative sources; the proposed examination would risk work-product and privilege disputes; and counsel's testimony is not crucial. Docs. 138, at 1–8; 144, at 1–2. She also argues that deposing her sole trial counsel would disrupt her representation and create an unnecessary risk that he becomes a witness. Doc. 138, at 3–7.

Defendants respond that Edmunds personally participated in the events underlying claims against England, examined England about their communications, and is the only person who can give his sworn account of his actions and statements. Doc. 142, at 1–6. They disavow any present intent to seek privileged or work-product information or to disqualify Edmunds. *Id.* at 1–2. Defendants contend the testimony is necessary to determine whether Edmunds's account conflicts with England's and whether he should be allowed at trial to question witnesses about communications in which he participated. *Id.* at 1–2, 5–6.

### 2. The *Boughton* Factors

The Federal Rules do not categorically exempt attorneys from depositions, but courts disfavor depositions of current opposing counsel because they invite delay, disruption, collateral privilege disputes, and interference with the attorney's representation. *See Boughton v. Cotter Corp.*, 65 F.3d 823, 829–30 (10th Cir. 1995); *Burge v. Teva Pharms. Indus., Ltd.*, No. 26-mc-201-DDC-TJJ, 2026 WL 745558, at *2, *5–6 (D. Kan. Mar. 17, 2026) (recognizing those risks and granting protection when alternative sources remained).

Under *Boughton*, the party seeking the deposition bears the burden to establish that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." 65 F.3d at 829–30 (adopting the criteria stated in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)); *see also id.* at 830 n.10 (placing the burden on the party seeking counsel's deposition). A court ordinarily has discretion to issue a protective order when any one or more of the criteria is unmet. *Id.* at 830–31.

i. **Whether Other Means Exist to Obtain the Information**

The first factor requires Defendants to show that Edmunds's deposition is the only reasonably practical means of obtaining the information, not merely a useful additional source. *See Burge*, 2026 WL 745558, at *3–4 (requiring the proponent to pursue available corporate, employee, and third-party sources before deposing opposing counsel); *Boughton*, 65 F.3d at 830–31 (affirming protection where the proponents had not adequately explored the desired information through other witnesses). Plaintiff identifies the written communications, England, other District recipients, and ordinary contention discovery as alternative sources. Defendants answer that only Edmunds can explain his own actions and meaning and rely on Plaintiff's deposition answers deferring to counsel.

However, Defendants have not carried their burden to show Edmunds is the only reasonably practical means of obtaining the information. The written communications provide the content and timing of Edmunds's pre-suit advocacy. England and other District participants may testify about what they received, said, understood, and did. Plaintiff already deposed England in both relevant capacities, and nothing in the record shows that Defendants sought but could not obtain a concrete historical fact from England, Plaintiff, another participant, or a Rule 30(b)(6) witness.

Plaintiff's deposition answers do not establish otherwise. The questions Defendants identify asked what remedy Plaintiff wanted from the District, whether Policy AC permitted an appeal, why she believed certain actions caused damage, and why her grievance should have been arbitrated. Doc. 142-2. Those questions largely sought legal contentions, Plaintiff's requested remedy, or the legal significance of counsel's actions. Plaintiff's inability to articulate those matters does not make Edmunds the only source of a discoverable historical fact. *See Boughton*, 65 F.3d at 830–31 (rejecting the contention that only counsel could explain his statements when the proponents had not made a substantial effort to explore other sources). Defendants may use ordinary discovery for Plaintiff's legal and factual contentions; they have not shown that a specific fact unavailable elsewhere requires counsel's deposition.

ii. **Whether the Information Is Relevant and Nonprivileged**

Defendants identify a limited category of information that satisfies the second factor: the objective history and content of Edmunds's communications with England and other District personnel. Those communications may be relevant to the District's handling of Plaintiff's attempted appeal, grievance, and arbitration and to England's own conduct. And because the communications were disclosed to District personnel outside Plaintiff's attorney-client relationship, the communications themselves are not protected by Plaintiff's attorney-client privilege. *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (explaining that disclosure of the substance of an otherwise privileged communication to a third party destroys confidentiality). Defendants state that they do not seek Plaintiff's confidential communications with Edmunds or counsel's protected work product. Doc. 142, at 1–2. A showing that at least some relevant information may be nonprivileged can satisfy this factor. *See Ed Tobergte Assocs. Co. v. Russell Brands, LLC*, 259 F.R.D. 550, 558–59 (D. Kan. 2009) (finding the second factor satisfied when some information sought from patent counsel was relevant and potentially nonprivileged).

The factor does not, however, authorize the unrestricted deposition Defendants noticed. Their notice identifies no topics, and their response seeks Edmunds's broader "version" of his participation and communications. Doc. 117; Doc. 142, at 1–2. Questions seeking counsel's reasons for taking a step or framing an argument could implicate his legal analysis, mental impressions, or litigation strategy even if the underlying communication with England is not privileged. *See* Fed. R. Civ. P. 26(b)(3)(B); *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947) (protecting counsel's mental impressions, legal theories, and strategy from unwarranted intrusion). The Court need not draw that boundary question by question because Defendants have not established the first and third factors. *See Burge*, 2026 WL 745558, at *5–6 (finding proposed factual limits impractical and declining an opposing-counsel deposition after the first factor failed).

**iii. Whether the Information Is Crucial to Preparation of the Case**

The third factor requires more than a showing that counsel participated in relevant events. Defendants must identify information crucial to preparing the case, not merely testimony that could corroborate, contradict, or supplement other available evidence. *See Boughton*, 65 F.3d at 830–31 (finding the factor unmet where the proponents had not shown that counsel's state of mind or testimony was crucial after failing to develop alternative proof). Plaintiff argues that the communications speak for themselves and that England can give her own account. Defendants respond that Edmunds's interactions are central to the claims against England and that his testimony is necessary before he may question England at trial.

Defendants do not identify a disputed, case-dispositive fact that only Edmunds can supply. The written communications memorialize his advocacy, and England can testify about her own statements, decisions, and actions. Whether Edmunds may examine a witness at trial about a communication in which he participated, whether an exhibit is admissible, and whether Kansas Rule

of Professional Conduct 3.7 ultimately applies present potential trial management or evidentiary questions. They do not establish that his deposition now is crucial to preparing the defense.

Defendants' principal authority, *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245 (D. Kan. 1995), arose on a materially different record. There, the parties already had agreed that opposing counsel would be deposed; the dispute concerned its scope. *Id.* at 247. Counsel had attended a meeting at the center of the dispute, allegedly drafted and signed a letter misrepresenting his client's inventory, and became involved in conduct central to setting aside a prior dismissal and reopening discovery. *Id.* at 246–49. The deposing party also represented that it would not inquire into privileged or work-product material. *Id.* at 249. Here, the propriety of the deposition itself is disputed, the available communications document counsel's advocacy, and Defendants have not identified an otherwise unavailable crucial fact. *United Phosphorus* therefore does not change the result under controlling Tenth Circuit authority.

Defendants have not established the first or third *Boughton* factors. Plaintiff also has shown good cause under Rule 26(c): requiring her current and sole trial counsel to sit for an unnecessary deposition would impose undue burden and disrupt counsel's preparation and representation, harms *Boughton* recognizes Rule 26(c) is designed to prevent. *See* 65 F.3d at 829–31. The motion for protective order is granted, and Defendants may not depose Edmunds on the present record.

### 3. Conclusion

Plaintiff's motion for protective order is granted. Rule 26(c)(3) makes Rule 37(a)(5) applicable to expenses, and Rule 37(a)(5)(A)(ii) precludes an award when the opposing party's position was substantially justified. Although Plaintiff prevailed, Defendants' position was substantially justified by Edmunds's participation in the pre-suit communications and the unusual overlap between his advocacy and some underlying events. Each side shall bear its own expenses related to Doc. 138.

### C. Defendants' Motion for Protective Order (Doc. 140)

#### 1. Background and the Parties' Positions

The federal investigation began on August 14, 2025, approximately ten months after this action was filed. Defendants describe two subjects under investigation: whether the District's policies concerning student-athlete participation and access to sex-segregated facilities based on gender identity comply with Title IX, and whether District policies concerning disclosure or nondisclosure of a student's transgender status to parents or guardians comply with FERPA. Doc. 140, at 4. The parties' earlier filings generally refer to an investigation by the Department of Education's Office for Civil Rights. Defendants later clarify that the Department's Student Privacy Policy Office technically is conducting the FERPA investigation and that the Department of Justice is handling the OCR matter. Doc. 146, at 1 n.2. The Court refers collectively to those related proceedings as the "federal investigation."

Plaintiff seeks both documents and testimony about the investigation. Second Request for Production No. 14 requests "[a]ll documents received from and produced to the US Department of Education investigation into possible violations of federal law, including without limitation FERPA and Title IX, within the past two years." Doc. 140-1, at 2–3. Document Request No. 2 accompanying Plaintiff's Rule 30(b)(6) notice repeats that request verbatim. Doc. 140-2, at 1. Topic 17 seeks testimony concerning "[the District's] responses to the Department of Education's inquiry into violations that resulted in findings that [the District] has policies in violation of FERPA and Title IX." Doc. 140, at 1 n.1.

Defendants objected to Request No. 14 as insufficiently particular, overbroad because it seeks "all documents," irrelevant, and disproportionate. Doc. 140-1, at 2–3. Their response also asserted that disclosure of an ongoing investigation would interfere with the agency process and prejudice the pending inquiry. *Id.* at 3. They incorporated that response into Document Request

No. 2. Doc. 140-2, at 1. As to Topic 17, the District objected on relevance, proportionality, interference, confidentiality, attorney-client privilege, and work-product grounds. Doc. 140, at 1 n.1. Defendants nevertheless produced 95 pages, USD13196–USD13290, "without waiving" their objections and now seek categorical protection from any further written or testimonial discovery concerning the investigation. *Id.* at 1–2, 7.

Defendants argue that the investigation is irrelevant because it postdates the events in suit, concerns the rights of students and parents under Title IX and FERPA rather than Plaintiff's claims, and includes current policies formed under a changed legal landscape. *Id.* at 3–7; Doc. 146, at 1–4. They also invoke the investigation's ongoing nature, possible interference with the agencies and the District's defense, student confidentiality, FERPA, privilege, and undue burden. Doc. 140, at 1–7; Doc. 146, at 3–5. In reply, Defendants emphasize Plaintiff's deposition testimony that the "recent policy" referenced in one rebuttal was not the Transgender Practices & FAQ, that the FAQ does not prohibit parent communication, and that Plaintiff was uncertain which version she received. Doc. 146, at 2–3; Doc. 146-1, at 2–13.

Plaintiff responds that part of the investigation concerns the same alleged District practices underlying her surviving free-exercise, unconstitutional-conditions, KPRFA, and municipal liability claims, as well as her request for injunctive relief. Doc. 143, at 1–7. She relies particularly on the District's representations about parent disclosure or nondisclosure and its Transgender Practices & FAQ concerning preferred names and pronouns. *Id.* at 2–7; Docs. 143-4, 143-5. Plaintiff also argues that Defendants' partial production undermines categorical claims of harm and that the existing Protective Order adequately addresses confidential student information. Doc. 143, at 7–8.

**2. Analysis**

Defendants seek categorical protection from any further production or Rule 30(b)(6) testimony concerning the federal investigation. The Court first clarifies the effect of their

conditional production. It then considers whether the requested discovery falls within Rule 26(b)(1) and whether Defendants have shown good cause under Rule 26(c). Because the investigation combines subjects that overlap the surviving claims with subjects outside this case, the analysis ultimately requires a defined boundary rather than an all-or-nothing result.

#### i. The Conditional Production Does Not Define the Permissible Scope

Rule 34 requires an objection to state its grounds with specificity, to identify whether responsive material is being withheld, and—when only part of a request is objectionable—to specify that part and permit inspection of the rest. Fed. R. Civ. P. 34(b)(2)(B)–(C). The responding party need not log every withheld document, but it must identify what it is withholding or describe the scope of the production sufficiently to permit an informed discussion. *See Deakin v. Magellan Health, Inc.*, 340 F.R.D. 424, 435–37 (D.N.M. 2022) (requiring supplementation when conditional responses did not identify withheld categories or define the scope of production); *Rowan*, 2016 WL 3743102, at *5 (explaining that identified search limits can satisfy Rule 34(b)(2)(C)). A response that asserts objections and then offers a production "subject to" or "without waiving" them is improper when it leaves the requesting party unable to determine whether the response is complete or partial. *See Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2684-JWL, 11-2685-JWL & 11-2686-JWL, 2014 WL 545544, at *2–3 (D. Kan. Feb. 11, 2014) (holding that conditional responses obscured whether documents were withheld and therefore waived the objections); *see also Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2684-JWL, 11-2685-JWL & 11-2686-JWL, 2014 WL 1569963, at *2–4 (D. Kan. Apr. 18, 2014) (maintaining that conditional responses are improper but withdrawing the waiver finding in unusual circumstances after the court learned that a privilege log had removed uncertainty and both sides agreed reconsideration was appropriate).

Defendants' original response did not meet that requirement. After asserting several objections, it stated, "Accordingly, Defendants' response is limited to records of discipline

administered by Plaintiff to students identified in Defendants' Rule 26 disclosures," a limitation unrelated to a request for federal-investigation materials. Doc. 140-1, at 3. Defendants later produced 95 pages "without waiving" their objections but did not identify in the response what categories they withheld. Doc. 140, at 1–2. That conditional production did not itself define the line between responsive material produced and withheld.

The defect does not warrant waiver here. Defendants' motion and briefing now make clear that they have withheld additional responsive documents and seek protection from all further production and testimony. The parties have fully litigated that position, and the Court can decide the objections and prescribe a proper scope without uncertainty or prejudice. Under these circumstances, enforcing Rule 34 through a ruling on the asserted objections supplies the appropriate remedy. The Court therefore turns to relevance, proportionality, and good cause.

**ii. Relevance and Proportionality**

The parties disagree about which surviving claims make the requested material relevant. The earlier background resolves that issue. Plaintiff's surviving free-exercise and unconstitutional-conditions theories allege that Defendants burdened her religious exercise or conditioned her employment on compliance with alleged practices concerning parent nondisclosure and students' preferred names and pronouns. *See* Doc. 44; Doc. 59, at 28–33, 42–43. Her KPRFA claims similarly turn in part on whether government action substantially burdened her religious exercise. *See* Doc. 59, at 35–38, 43. And her *Monell* theory requires a District policy or custom that caused an alleged constitutional injury. *See Monell*, 436 U.S. at 694; Doc. 59, at 33–35.

Documents exchanged with federal agencies may bear on those issues when they show how the District described, interpreted, implemented, or revised a practice concerning whether staff disclose to parents or guardians a student's asserted name, pronouns, gender identity, or transgender status. Materials concerning the Transgender Practices & FAQ likewise may be relevant to the

extent they address parent disclosure or staff use of student names and pronouns. The District's own factual descriptions of those practices could bear on their existence, source, scope, operation, and current status, matters pertinent to Plaintiff's surviving burden-on-religion and municipal-liability claims and to her request for injunctive relief concerning continuing practices.

The investigation's post-suit timing limits but does not eliminate that relevance. Later conduct cannot have caused the employment actions Plaintiff challenges from early 2023. But later evidence may provide circumstantial evidence of how a municipality understood and administered an alleged policy or custom. *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (explaining that conduct after an alleged violation cannot have caused the earlier event but may provide circumstantial evidence that a municipality treated a written policy as a policy in name only and routinely encouraged contrary behavior). Evidence of the current policy or any revision also bears on Plaintiff's request for injunctive relief directed at ongoing District practices. Plaintiff's deposition testimony may weaken an inference that a particular FAQ version governed her conduct in 2023, but it does not make every document concerning related District practices undiscoverable. That testimony affects weight and the appropriate scope, not categorical discoverability.

Other portions of the investigation fall outside Rule 26(b)(1). Plaintiff asserts no claim concerning eligibility for student athletics or access to sex-segregated facilities. Documents devoted solely to those subjects do not become relevant merely because the same investigation also includes a parental disclosure issue. Nor has Plaintiff shown that student-specific facts are relevant when they do not illuminate a District policy or practice within the permitted subjects. Rule 26(b)(1) therefore does not make the entire agency file discoverable merely because discrete subjects overlap the live claims. *See C.T. v. Liberal Sch. Dist.*, No. 06-2093-JWL, 2008 WL 394217, at *3–4 (D. Kan. Feb. 11, 2008) (declining to compel complete student files and requiring only records bearing on the

alleged assault or harassment); *see also Tahirkheli*, 2026 WL 221140, at *5–7 (compelling the policy tied to the incident while denying unrelated policies and all hospital bylaws).

The proper boundary is stated in the section below. In substance, discovery is permitted only for agency materials and District testimony concerning (1) parent or guardian disclosure or nondisclosure of a student's asserted name, pronouns, gender identity, or transgender status; (2) District expectations for staff use of a student's asserted name or pronouns; and (3) the creation, revision, implementation, or current status of the Transgender Practices & FAQ to the extent it addresses either of those two subjects. Discovery devoted solely to athletics, sex-segregated facilities, or unrelated student-specific incidents is excluded.

#### iii. Defendants Have Not Shown Good Cause for Categorical Protection

Defendants' remaining grounds do not justify a blanket prohibition. First, they provide no declaration, estimated document volume, projected cost, or description of a search or review burden. Their undue burden argument rests principally on the premise that all requested information is irrelevant. Because defined portions are relevant (as discussed above), that premise cannot establish that the narrowed discovery is unduly burdensome or disproportionate. Defendants already collected and produced USD13196–USD13290, and the record contains no particularized facts showing that a focused supplemental production would impose undue burden or expense. *See McBride*, 250 F.R.D. at 583–84 (requiring a particular and specific factual showing); *Gulf Oil*, 452 U.S. at 102 n.16 (rejecting stereotyped and conclusory assertions as insufficient to establish good cause).

Second, Defendants identify no statute, regulation, agency request, declaration, or concrete event showing that discovery under this Court's Protective Order would interfere with the federal investigation or the District's defense. The regulations cited in reply authorize specified federal access to education records; they do not create a civil-discovery privilege covering everything the

District sends to or receives from an agency. *See* 34 C.F.R. §§ 99.31(a)(3), 99.35(a), 100.6. The Court does not decide the investigation's status or whether any agency communication constitutes a final finding. It holds only that invoking the matter's ongoing status, without particularized facts explaining how the narrowed discovery would cause interference or other harm, does not satisfy Rule 26(c). *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 935–37 (6th Cir. 2019) (holding that references to ongoing DEA investigations failed to establish good cause for blanket protection where the agency did not explain how disclosure would impair them); *see also McBride*, 250 F.R.D. at 583–84; *Gulf Oil*, 452 U.S. at 102 n.16 (requiring a particularized factual showing rather than conclusory assertions).

Third, confidentiality does not warrant wholesale nondisclosure. The existing Protective Order covers nonpublic education records containing personally identifiable information, personnel information, and testimony about those materials. Doc. 68, ¶¶ 1–6. It permits qualifying material to be designated confidential and restricts its use and disclosure to this litigation. *Id.* ¶¶ 2–8. Courts regularly rely on such safeguards rather than bar relevant discovery. *See Tahirkheli*, 2026 WL 221140, at *4 (compelling confidential material subject to an existing protective order); *Edelman*, 2025 WL 2374162, at *4 (relying on a protective order to safeguard confidential business information while permitting discovery).

FERPA does not categorically bar disclosure in civil discovery. It permits disclosure of education records pursuant to a judicial order, subject to advance notice to parents and eligible students, and courts may combine that process with a protective order. *See Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1179–81 (D. Kan. 2018) (ordering production under a protective order after FERPA notice); *C.T.*, 2008 WL 394217, at *3–4 (directing production of relevant student records subject to a protective order). Personally identifiable student information unnecessary to understand a responsive policy or practice may be redacted. When identifying information is

necessary, Defendants must complete FERPA's notice process and produce the information under the Protective Order.

**iv. Scope of Protection and Required Discovery**

Defendants' motion is granted in part and denied in part. Within 14 days of this Order, Defendants shall produce, to the extent not already produced, nonprivileged documents responsive to Second Request for Production No. 14 and Document Request No. 2 that were exchanged between the District or its representatives and the Department of Education, the Student Privacy Policy Office, the Office for Civil Rights, or the Department of Justice and that concern one or more of these three subjects:

- District policies or practices concerning whether District staff disclose or do not disclose to a parent or guardian a student's asserted name, pronouns, gender identity, or transgender status;
- District policies or practices concerning staff use of a student's asserted name or pronouns; or
- the creation, revision, implementation, or current status of the District's Transgender Practices & FAQ, but only to the extent the material addresses subject 1 or 2.

This obligation includes the District's factual representations to the listed federal entities about those three subjects and responsive documents the District received from them, provided the documents are within Defendants' possession, custody, or control. Defendants need not duplicate USD13196–USD13290.

Defendants may withhold or redact separable material devoted solely to student-athlete participation or access to sex-segregated facilities. They also may redact student-specific facts and personally identifiable information that do not bear on one of the three permitted subjects. If personally identifiable student information is necessary to understand responsive information, Defendants shall initiate any required FERPA notice within the 14-day production period and

produce the information promptly after the notice period expires without objection or after the Court resolves any objection. The existing Protective Order governs the production. Any responsive material withheld as privileged or protected work product must be identified in the manner Rule 26(b)(5) and the Court's prior orders require.

Defendants are protected from written and testimonial discovery concerning portions of the federal investigation devoted solely to student athletics, access to sex-segregated facilities, or student-specific incidents that do not bear on one of the three permitted subjects.

Within 30 days of this Order, the District shall present a Rule 30(b)(6) witness for no more than two additional hours of examination on Topic 17 as narrowed here. The examination may address the District's factual policies or practices within subjects 1 and 2; the creation, revision, implementation, and current status of the Transgender Practices & FAQ within subject 3; the District's factual representations to federal entities about those subjects; and any resulting change in the relevant District policy or practice. It may not inquire into athletics, sex-segregated facilities, unrelated student-specific incidents, attorney-client communications, protected work product, or a federal agency's uncommunicated internal deliberations or mental processes. Counsel shall confer promptly and in good faith to select a mutually workable date. This limited discovery is authorized notwithstanding the expired discovery deadline; discovery is not otherwise reopened.

### 3. Conclusion

Defendants' motion for protective order is granted in part and denied in part. Because each side prevailed in part and their positions were substantially justified, the Court declines to apportion expenses under Rules 26(c)(3) and 37(a)(5)(C). Each side shall bear its own expenses related to Doc. 140.

## IV. Conclusion

In sum, Defendants must provide the limited privilege-log clarification and response described above, but Plaintiff has not established entitlement to wholesale production, forensic inspection, or further relief on the remaining requests in her motion to compel. Defendants have not made the heightened showing required to depose Plaintiff's trial counsel because the relevant historical information is available from documents and nonlawyer witnesses and counsel's testimony is not crucial. Nor have Defendants shown good cause for categorical protection from discovery concerning the federal investigation. Only the defined subjects of that investigation that overlap Plaintiff's surviving claims may be discovered, subject to the limitations and safeguards stated above.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Protective Order to Preclude Deposition of Plaintiff's Trial Counsel (Doc. 138) is **GRANTED**. Defendants may not depose Fritz Edmunds in this action on the present record.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion to Compel Discovery (Doc. 139) is **GRANTED IN PART and DENIED IN PART**. Within 14 days of this Order, Defendants shall provide the supplemental privilege log required in Section II.B.3. Within seven days after receiving it, Plaintiff shall notify chambers whether any privilege-log issues remain unresolved, as directed in that section.

**IT IS FURTHER ORDERED** that Defendants' Motion for Protective Order (Doc. 140) is **GRANTED IN PART and DENIED IN PART**. Defendants shall complete the document production and limited Rule 30(b)(6) deposition described in Section III.C.2.iv. Defendants are protected from the discovery excluded in that section.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Defendants' Reply or, in the Alternative, for Leave to File a Sur-Reply (Doc. 147) is **DENIED**.[3]

**IT IS FURTHER ORDERED** that each party shall bear its own expenses associated with Docs. 138, 139, and 140.

**IT IS SO ORDERED.**

Dated September 9, 2026, at Wichita, Kansas.

/s/ Brooks Severson
Brooks G. Severson
United States Magistrate Judge

---

[3] Plaintiff filed a motion to strike because Defendants' reply spans five pages and exceeds the three-page limit for replies supporting discovery-related motions. *See* D. Kan. Rule 7.1(d)(1); Doc. 86. Indeed, Defendants should have sought leave before exceeding that limit. *See* D. Kan. Rule 7.1(d)(4). The Court nevertheless declines to strike the reply. The Court conducted a cursory review of Plaintiff's proposed sur-reply solely to determine whether leave should be granted; the proposed sur-reply would not alter the analysis or disposition of Defendants' motion. Plaintiff's motion to strike or, alternatively, for leave to file the proposed sur-reply (Doc. 147) therefore is denied. Counsel are reminded that future briefing must comply with the page limitations prescribed by the Local Rules.